United States Courts
Southern District of Texas
FILED
*May 21, 2026*
Nathan Ochsner, Clerk of Court

**Tre Christopher Roberts LL.M.**
**Plaintiff**
**1525 Aviation Blvd #213**
**Redondo Beach, CA 90278**
**Email : chrisrobertslawesq@gmail.com**

**FEDERAL DISTRICT COURT**

**5TH CIRCUIT**

**SOUTHERN DISTRICT OF TEXAS**

**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN THE MATTER OF:<br><br>TRE CHRISTOPHER ROBERTS<br>PLAINTIFF<br><br>VS.<br><br>MONTGOMERY COUNTY, MCSO, DET. RICHARD STEIN, MIKE HOLLEY, JAMIE SULLA, DOES 1-10<br>DEFENDANT'(S) | * * * * * * * * * | FILE No.:<br><br>**PLAINTIFFS RESPONSE TO DEFENDANT'S MOTION TO DISMISS AND NOTICE OF RELATED CASE AND RELATED CASE FILINGS**<br><br>**CASE NO : 4:26-CV-1389** |

Judge: **Hon. George C. Hanks Jr.**

Next Hearing: May 28th 2026

**PLAINTIFFS RESPONSE TO DEFENDANT'S MOTION TO DISMISS AND NOTICE OF RELATED CASE AND RELATED CASE FILINGS**

**TO THE HONORABLE GEORGE C. HANKS, U.S. DISTRICT JUDGE:**

Plaintiff Tre Christopher Roberts respectfully provides this Notice to the Court to address the Defendants' Motion to Dismiss (Doc. 76). The Defendants incorrectly urge this Court to abstain under *Younger v. Harris*. The Plaintiff submits that the state criminal proceedings against him do not warrant abstention because they are being pursued in **bad faith** for the express purpose of retaliating against this Federal Civil Rights Action.

## I. PATTERN OF RETALIATORY CRIMINAL INTERFERENCE

The Plaintiff brings to this Court's attention a clear pattern of conduct demonstrating that the state criminal process is being utilized as a weapon to Materially interfere with the progress of this Federal Litigation:

1. On April 14, 2026, while the Plaintiff was attending a professional U.S. Government Law Enforcement interview, he was apprehended on an arrest warrant issued by Montgomery County. This warrant is the fruit of a Derivative of an affidavit lacking a factual basis or probable cause—predicated on the same contested deed that resulted in the State's own dismissal of theft charges in Cause No. 25-10-16082-CR. The execution of this warrant was not a legitimate law enforcement action; it was a targeted maneuver specifically executed to render the Plaintiff unable to respond to a Court-ordered Memorandum and Recommendation regarding a pending Temporary Restraining Order (TRO) issued on april 28th in this civil matter.

2. This arrest directly resulted in the Plaintiff being incapacitated for over 30 days, causing him to miss a critical federal court filing deadline. This pattern of conduct is not an isolated occurrence, but a continuation of the same retaliatory strategy brought to this Court's attention in the Plaintiff's Original Complaint and Motion for TRO. By utilizing the state criminal process to

physically disable the Plaintiff at the exact moment a critical civil deadline was reached, the Defendants have confirmed that their intent is to Utilize the criminal process to serve as a tactical impediment to the justice system to bypass this Court's jurisdiction and stifle the Plaintiff's pursuit of his civil rights. This violates Texas Constitution Art. I, § 19 (Due Course of Law) and the U.S. Constitution, 5th and 14th Amendments (Due Process), as the State's action is an arbitrary, capricious, and vindictive interference with a litigant's right to seek redress in federal court. Furthermore, these bad-faith actions have caused the Plaintiff irreparable harm to his professional reputation and the forfeiture of significant law enforcement and legal employment opportunities. This systematic damage to the Plaintiff's career is a direct and foreseeable consequence of the Defendants' retaliatory conduct. The Plaintiff stands ready to provide detailed evidence, including updated documentation of the most recent positions lost and professional damages, for the Court's review upon request.

3. **Vindictive Bond Escalation:** Following the initial warrant in question, the State—with full knowledge of the Plaintiff's exculpatory evidence, Ongoing Civil litigation to restore county record and the rightful owner (lillene Ebanks) and the dismissal of a prior theft charge (Cause No. 25-10-16082-CR) predicated on the same deed—doubled his bond from $50,000 to $100,000.

**Selective Enforcement:** This aggressive prosecutorial stance is conspicuously absent in the handling of other parties (e.g., Christina Laugere), who, unlike the Plaintiff, have not filed federal civil rights claims against the County.The State's selective enforcement of the law establishes a clear *prima facie* case of discriminatory targeting. While the Plaintiff has been subjected to Void Ab initio warrants, aggressive arrest, incarceration, and escalating bond conditions, Christina Laugere—who was directly implicated in the same subject matter and against whom there is documented evidence of non-consent and an admission of forgery—has faced no comparable prosecutorial scrutiny, in fact based on record she has to date faced no prosecution at all.

This disparate treatment violates Texas Constitution Art. I, § 3 (Equal Rights) and the U.S. Constitution, 14th Amendment (Equal Protection). The State's failure to act against Ms. Laugere, while

simultaneously fully weaponizing the criminal process against the Plaintiff, demonstrates that the current prosecution is not motivated by a neutral application of law, but by an intent to penalize the Plaintiff for his status as a federal civil rights litigant.

## II. REBUTTAL TO YOUNGER ABSTENTION

The Defendants' reliance on *Younger* abstention is misplaced. *Younger* does not require a federal court to stay its hand when the state criminal process is used as an instrument of harassment, bad faith, and / or retaliation, quite the Contrary, in fact the Law compels intervention. The Plaintiff is currently prosecuting the following motions among others in the 9th Judicial District Court (Montgomery County) to address these pervasive and persistent constitutional infringements **(SEE ATTACHED NOTICE OF RELATED CASE FILINGS)**:

- **Omnibus Motion to Dismiss:** Asserting legal impossibility and prosecutorial vindictiveness based on *Neal v. State and* other Civil rights violations.

- **Motion to Terminate Pretrial Bond Conditions:** Documenting violations of the 8th Amendment and the Texas Constitution (Art. I, § 13) regarding the Plaintiff's status as a disabled veteran and pre-existing medical conditions.

The April 14th , 2026, arrest and May 18th 2026 release of the Plaintiff represents an "extraordinary and exceptional" circumstance that transcends a standard custodial encounter. The Plaintiff was apprehended at the explicity command Montgomery County in his home state of California while attending a professional law enforcement-related interview for the United States Government Department Of Justice —demonstrating his clear intent to cooperate with the legal system and his lack of flight risk or general malicious intetions. This occurred durIng ongoing civil Litigtion against the Defendant's and during the precise temporal juncture where his response to a court-ordered Memorandum and Recommendation regarding a pending Temporary Restraining Order (TRO) and responses to Defendants was due. This specific "temporal proximity"—the Post litigation warrant & arrest —is not a coincidence; it is a Clear

evidentiary nexus display of a reasonable likelihood of retaliatory intent designed to suppress the Plaintiff's ability to defend his property interests in civil court.

This arrest was a Strategic timing maneuver designed to physically disable the Plaintiff at the exact moment his civil rights litigation reached a critical stage, thereby achieving by state-sanctioned detention what the Defendants could not achieve through legal argument alone. Such a blatant attempt to silence a federal litigant by arresting him during active litigation they were aware of with civil deadlines falls squarely into the "bad faith" exception to *Younger* abstention.

The Defendants suggest this Court should abstain. However, abstention assumes a legitimate state interest in a pending criminal prosecution. Where the prosecution is a pretextual instrument of retaliation —characterized by (1) the dismissal of a primary felony to 're-package' it as a lesser or more broad charge to evade prior evidence, (2) the timing of an arrest surrounding ongoing critical civil court deadlines and appearance dates, and (3) the blatant disparate treatment compared to similarly situated individuals—the State loses its cloak of legitimacy. This is not a 'pending criminal case' to be respected under *Younger*; it is a Coordinated effort to impede federal jurisdiction intended to neutralize a federal civil rights plaintiff. Equity demands this Court retain jurisdiction.

## III. JUDICIAL NOTICE

The Plaintiff respectfully requests that this Court take Judicial Notice of these related criminal proceedings and the documented pattern of retaliation Since October 2025 When Plaintiff informed the county he was a victim of third party fraud, as they serve as dispositive evidence that the Defendants have moved to dismiss this action to insulate themselves from accountability for the constitutional violations alleged in the Original Petition.

**PRAYER,** based on the record, the evidence and applicable law, The Plaintiff respectfully requests that this Court consider this response in denying the Defendants' Motion to Dismiss (Doc. 76) and associated claims of Qualified Immunity, as none of ongoing various civil violations are reasonable or "good faith" Mistakes, and proceed with the adjudication of this civil rights action.

May 20th 2026

Respectfully submitted,

/S/ Tre Christopher Roberts, LL.M.

*Pro Se*

1525 Aviation Blvd #213

Redondo Beach, CA 90278

Email: chrisrobertslawesq@gmail.com

# NOTICE OF RELATED CASE FILINGS

RECEIVED AND FILED
FOR RECORD
At 1:31 O'Clock P M.

MAY 20 2026

Melisa Miller, District Clerk
Montgomery, Texas
By ____ Deputy

**Tre Christopher Roberts LL.M.**
**Defendant**
**Pro Se**
**1525 Aviation Blvd #213**
**Redondo Beach, CA 90278**
**Email : chrisrobertslawesq@gmail.com**

**UNITED STATES OF AMERICA**

**STATE OF TEXAS**

**9TH JUDICIAL DISTRIST**

**MONTGOMERY COUNTY**

| | |
|---|---|
| IN THE MATTER OF:<br><br>THE STATE OF TEXAS<br><br>PLAINTIFF<br><br>VS.<br><br>TRE CHRISTOPHER ROBERTS<br><br>DEFENDANT' | FILE No.:<br><br><u>DEFENDANT'S MOTION TO PROCEED PRO SE AND TO RELIEVE COURT-APPOINTED COUNSEL</u><br><br>**<u>CAUSE NO. 26-03-05426-CR</u>** |

Judge: **HONORABLE PHIL GRANT** Next Hearing: JUNE 11, 2026 9 AM

**TO THE HONORABLE PHIL GRANT, JUDGE OF SAID COURT:**

COMES NOW the Defendant, Tre Christopher Roberts, LL.M. appearing *pro se* in the above-styled and numbered cause, and respectfully moves this Honorable Court to grant him the right to represent himself in all matters pertaining to this case, and in support thereof, would show the Court the following:

Notice of related case Filing 4:26-CV-1389

**I.**

The Defendant has been charged with Forgery Of a Financial Instrument. Currently, Jeremy Finch, Esq. has been appointed by this Court to represent the Defendant.

**II.**

The Defendant hereby invokes his constitutional right to self-representation under the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Texas Constitution. The Defendant is competent, understands the nature of the charges against him, and is fully aware of the disadvantages and risks associated with representing himself in a criminal proceeding.

**III.**

The Defendant believes that proceeding *pro se* is necessary to ensure the effective presentation of his defense, as he has a fundamental disagreement with current appointed counsel regarding trial strategy, the handling of critical exculpatory evidence, and the motion practice required to protect his constitutional rights.

**IV.**

The Defendant respectfully requests that the Court relieve Jeremy Finch, Esq. of his duties as appointed counsel. The Defendant acknowledges that should this motion be granted, he will be responsible for his own defense, including adherence to all procedural rules, evidentiary standards, and courtroom conduct required by the Court.

**PRAYER FOR RELIEF**

WHEREFORE, PREMISES CONSIDERED, the Defendant respectfully prays that this Honorable Court:

1. Conduct a hearing at the earliest opportunity to advise the Defendant of the dangers and disadvantages of self-representation;

2. Grant this motion and allow the Defendant to proceed *pro se*; and

3. Order the discharge of appointed counsel, Jeremy Finch, Esq. from further representation in this matter.

**RESPECTFULLY SUBMITTED,**

S/ TRE CHRISTOPHER ROBERTS LL.M.

*Date :05/18/2026*

## *CERTIFICATE OF SERVICE*

I hereby certify that a true and correct copy of the foregoing Motion to Proceed Pro se & *Omnibus Motion to Dismiss* has been served upon the Montgomery County District Attorney's Office, located at 207 W. Phillips St., Conroe, TX 77301, on this 19th day of May, 2026, via Hand Delivery

Tre Christopher Roberts, LL.M.

*Pro Se*

Notice of Related Case Filing 4:26-CV-1389

RECEIVED AND FILED
FOR RECORD
At 1:41 O'Clock P M.

MAY 20 2026

Melisa Miller, District Clerk
Montgomery, Texas
By CL Deputy

**Tre Christopher Roberts LL.M.**
**Defendant**
**Pro Se**
**1525 Aviation Blvd #213**
**Redondo Beach, CA 90278**
**Email : chrisrobertslawesq@gmail.com**

**UNITED STATES OF AMERICA**

**STATE OF TEXAS**

**9TH JUDICIAL DISTRIST**

**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| IN THE MATTER OF:<br><br>THE STATE OF TEXAS<br><br>PLAINTIFF<br><br><br>VS.<br><br><br>TRE CHRISTOPHER ROBERTS<br><br>DEFENDANT' | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* | FILE No.:<br><br><br><br>**DEFENDANT'S OMNIBUS MOTION TO DISMISS THE INDICTMENTS FOR CIVIL RIGHTS VIOLATIONS, LEGAL IMPOSSIBILITY, STRUCTURAL DEFECTS, PROSECUTORIAL VINDICTIVENESS, LACK OF PROBABLE CAUSE AND MOTION TO SUPPRESS EVIDENCE**<br><br>**CAUSE NO. 26-03-05426-CR** |

Judge: **HONORABLE PHIL GRANT** Next Hearing: JUNE 11, 2026 9 AM

**TO THE HONORABLE PHIL GRANT, JUDGE OF SAID COURT:**

*CAUSE NO. 25-10-16082-CR*

**CAUSE NO. 26-03-05426-CR**

| | |
|---|---|
| **THE STATE OF TEXAS** | **IN THE 9TH DISTRICT COURT** |
| **VS.** | **OF** |
| **TRE CHRISTOPHER ROBERTS** | **MONTGOMERY COUNTY, TEXAS** |

**TO THE HONORABLE PHIL GRANT, JUDGE OF SAID COURT:**

NOW COMES the Defendant, Tre Christopher Roberts, respectfully moves this Honorable Court to immediately dismiss with prejudice the indictments in Cause No. 25-10-16082-CR and Cause No. 26-03-05426-CR, and to suppress all evidence derivative of unlawful law enforcement actions.

This Omnibus Motion is grounded directly upon the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, Article I, Sections 9, 10, 13, and 19 of the Texas Constitution, and the absolute statutory mandates of the Texas Code of Criminal Procedure.

In support of this Motion, the Defendant demonstrates that the State's dual prosecutions are built entirely upon a foundation of structural illegality, deliberate deception of the magistrate, statutory impossibility, and unconstitutional retaliatory prosecutorial escalation. Under overwhelming, unassailable Texas state case law, this Court possesses the inherent authority and the constitutional (Both US & Texas) obligation to grant this dismissal and protect the integrity of the judicial system.

## I. JURISDICTIONAL FRAMEWORK & CORE CHARGING PROFILE

The dual prosecutions carried out by the Montgomery County District Attorney's Office are structured across two highly irregular, overlapping criminal instruments targeting the exact same transaction date and real property itemization:

| Cause Number | Offense Charged | Governing Statute | Degree of Felony | Alleged Date of Offense | Target Real Property & Assessed Tax Value |
|---|---|---|---|---|---|
| **25-10-16082-CR** | Theft of Property $\ge$ $150K < $300K, Enhanced IAT | Tex. Penal Code § 31.03(f) | First-Degree Felony | March 6, 2025 | 22342 Curly Maple Dr, New Caney, TX 77357 ($253,617) |
| **26-03-05426-CR** | Forgery of a Financial Instrument | Tex. Penal Code § 32.21(e-2) | Third-Degree / State Jail (firrst Degree enhanced) | March 6, 2025 | 22342 Curly Maple Dr, New Caney, TX 77357 ($253,617) |

## <u>II. FACTUAL BACKGROUND & STRUCTURAL CONCEALMENT OF EXCULPATORY RECORD</u>

An evaluation of the underlying files exposes a severe and systemic exclusion of material facts carried out during the warrant and grand jury processes:

1. **The Fraud Realization & Proactive Civil Rectification:** On or about October 2025, the Defendant realized he had been targeted and victimized by a third-party real estate fraud scheme involving 22342 Curly Maple Dr, New Caney, TX 77357 (**Exhibit A – Quit Claim Deed**). In March 2025 Christina Laugere The Defendant was approached by Christina Laugere, who solicited a notary referral for a transaction in which the Defendant had no prior involvement Mr. Roberts referred her to a Notary he used the year prior that he found through Fiverr a internet based freelance consulting app, A Sharon Dixon. Sometime after, Christina Laugere presented a completed set of notarized documents (including the Lot description HANDWRITTEN and the Signature of Lillene Ebanks) to the defendant for him to sign his own signature. Mr. Roberts was

not Present when Lillene Ebanks Signed the Document. It is held as a matter of law that Signing your own signature on a documented without knowledge of its invalidity or fradulent orgin does not amount to actus reus nor the mens rea to satisfy probable cause for Forgery, nor a conviction beyond a reasonable doubt. In addition, Christina Laugere held herself out to be a Texas Realtor, Personal & Business representative of lillene Ebanks / authorized signatory / Power of Attorney for ms Ebanks estate. Mr. Roberts is not familiar with Lillene Ebanks Signature and does not know how to write in cursive. Mr Roberts, Does not know Lillene Ebanks and have never had an intent to deprive or defraud her (Lillene Ebanks has verified this). Rather than hiding,lying or attempting to exploit the situation, the Defendant acted immediately as an injured party. He Contacted Montgomery county and informed the county that he was a victim of third party fraud. He sent email and snail mail to ensure the County was informed of what had transpired **(See Exhibit B – Montgomery County Emails).** Around that time or shortly after the County initated a warrant for Theft Pursuant to Texax Penal Code 31.03. This Warrant was enhanced (ENH IAT) He retained legal counsel (Attorney Brian Foley) to contact the Montgomery County District Attorney's Office to explain that he was a victim of third-party fraud based on the misrepresentation of a Third Party (Christinia Lauager) and never had any malicious intention toward Lillene ebanks (See **Exhibit C – Brian Foley Agreement**).

2. **Voluntary Reversal of Transfer:** To actively correct the public records, the Defendant executed and filed a voluntary civil equity action and a Quit Claim Deed dated October 2, 2025, explicitly stating that the document was executed *"to effectuate the reversal of the erroneous transfer and restore the property to the Original Owner/Grantee"* Lillene Ebanks (**Exhibit D – Reversal Deed**) The Defendant formally notified Montgomery County officials of this civil filing, confirming his lack of criminal intent and his genuine restorative purpose (**See Exhibit E- Proof Of mailing reversal deed to Montgomery County**). The Defendant's proactive filing of the October 2025 Reversal Deed is a matter of public record, predating the State's escalation of

charges. Under Texas law, an individual who acts to correct a potential fraud—rather than to conceal it—has, by definition, negated the 'intent to defraud' required by the Penal Code. The State's decision to ignore this restorative act in favor of an enhanced felony warrant For Theft, fraud, forgery or the like is not the exercise of discretion; it is the rejection of exculpatory evidence as a matter of law.

3. **The Omissions in the Theft Affidavit:** Despite having actual knowledge of these facts, Detective Richard Stein of the Montgomery County Sheriff's Office filed a Probable Cause Affidavit for an arrest warrant on September 30, 2025 (See **Exhibit F – Unconstitutional warrant**) and continued to support this unconstitutional warrant to the point of Indictment. The affidavit relied on the complaint of Lillene Ebanks (See **Exhibit G – Lillene Ebanks Affidavit**), which noted a cloud on her title due to a lack of authorization but did not explicitly state or show that she was defrauded by the Defendant. Detective Stein omitted or recklessly disregarded the Defendant's Lack of Intent to deprive, his lack of physical possession, and the legally void status (Void Ab initio status) of the instrument, inducing Magistrate J. Walkon of the Montgomery county 9th Judicial District in Montgomery County to sign an invalid Enhanced theft warrant (See **Exhibit H – Complaint / Affidavit for arrest**).

4. **Third-Party Culpability Omitted:** The record reveals that third-party actors, including co-defendant Christina Leigh Laugere, were the actual / moving forces behind the transaction. While Christina Laugere had physically been to the properties within the preceding months and held herself out as an authorized signatory, power of attorney, and manager of the business affairs, the record confirms that the Defendant had never had any contact with record owner Lillene Ebanks (See **Exhibit H – Complaint / Affidavit for arrest**).

These details were completely suppressed to isolate and target the Defendant. Furthermore, In the Original Affidavit for theft, Christina Laugere admits to signing the deed for the property she

attempted to appropriate and claimed Lillene Ebanks was present for the signature (See **Exhibit H – Complaint / Affidavit for arrest**). The deeds in Question bare the Same Signature and same handwriting on Both (See **Exhibit I – Quit Claim Deeds)**. In addition, The address for correspondance on both Deeds directly and Accurately aligns with Christina Laugeres Office Address In Santa Monica (See **Exhibit I – Quit Claim Deeds)**. Also, of Note, Christina Laugere Filed A Civil Paternity Suit on January 12th 2026 Utilizing the very address of the property she attempted to appropriate See **Exhibit J – Christina Laugere Civil suit)**. The Record also Reflects that she sent an appraiser to this home in an attempt to get equity. In Contrast, Mr. Roberts has never utilized the home nor in address, nor has mr Roberts Visited the home or sent an appriser for the purposes of financial gain. There is a clear constrast in the evidence and intention and actions of Mr. Roberts and Christina Lauere. As if the cloud Reasonable doubt werent enough, the Recorded and blatant civil rights violations outlined below mandate , necessitate and demand a dismissal in the interrest of justice.

## III. CITATION OF AUTHORITY: CONTROLLING TEXAS STATE CONTEXT CASE LAWS

To guide this Court to the non-discretionary requirement of dismissal and total evidentiary exclusion, the defense relies upon seminal Texas Supreme Court, Court of Criminal Appeals, and intermediate Appellate court rulings.

**A. Substantive Real Property Substantive Law: The "Void Ab Initio" Doctrine**

The initial felony theft warrant relies entirely on a March 6, 2025 quitclaim deed containing a forged notary block. Long-standing, immutable Texas substantive real property law establishes that a forged instrument has zero legal existence.

**1. *Nobles v. Marcus* , 533 S.W.2d 923, 926 (Tex. 1976):**

The Supreme Court of Texas set forth the absolute, unyielding threshold distinction between a

deed procured by fraud and a forged deed. A deed obtained through fraud or misrepresentation is merely voidable (valid until affirmatively set aside by judicial order); conversely, a forged deed is an absolute nullity (*void ab initio*) from the precise moment ink hits the paper.

2. ***Ford v. Exxon Mobil Chem. Co.*, 235 S.W.3d 615, 618 (Tex. 2007):**

   The Supreme Court re-emphasized that a void deed passes absolutely no title, cannot be legally registered, and cannot provide a basis for even a bona fide subsequent purchaser to acquire property rights. It is treated under Texas law exactly as if the document never existed.

3. ***Vazquez v. Deutsche Bank Nat'l Tr. Co., N.A.*, 441 S.W.3d 783, 787 (Tex. App.—Houston [1st Dist.] 2014, no pet.):**

   Holding explicitly that a forged deed is void, passes no title, and cannot legally affect real estate records. It is completely impotent from inception.

4. ***Lighthouse Church of Cloverleaf v. Tex. Bank*, 889 S.W.2d 595, 601 (Tex. App.—Houston [14th Dist.] 1994, writ denied):**

   "When a document is void or void ab initio it is as if it did not exist because it has no effect from the outset."

5. ***Dyer v. Cotton*, 333 S.W.3d 703, 711 (Tex. App.—Houston [1st Dist.] 2010, no pet.):**

   Reaffirming that because a forged deed is a complete nullity, it is incapable of passing title or creating an enforceable interest of any type under Texas law.

**B. Criminal Application: Statutory Impossibility Under Texas Penal Code § 31.03**

Because the instrument was known to be void ab initio, the state's theory of a "theft of real property" is a legal and statutory impossibility.

6. ***Stewart v. State*, 44 S.W.3d 582, 589 (Tex. Crim. App. 2001):**

   Confirming that the statutory definition of theft requires an effective appropriation that alters possessory or legal interests. Where no legal or physical interest is or can be transferred, a charge of completed theft cannot stand.

7. ***State v. Rosenbaum*, 910 S.W.2d 934, 948 (Tex. Crim. App. 1995):**

Holding that when the undisputed legal facts demonstrate that the statutory elements of an indictment cannot be fulfilled as a matter of law, the charging instrument is structurally defective and subject to pre-trial dismissal. This case is not a Matter of disputed Facts or factual sufficicny as the prosecution may claim, but rather Franks / Rights Violations.

I am not asking for a pretrial evidentiary hearing to test the State's evidence (forbidden by Rosenbaum); I am asking for an evidentiary hearing to test the veracity of the warrant affidavit (mandated by Franks/Duka).

8. ***Franks v. Delaware 438 U.S. 154 (1978)*:**

Establishing that a defendant cannot be prosecuted for an offense where the underlying statutory predicate is a legal impossibility under the plain reading of the text.

**C. Pre-Trial Warrant Defects: Franks v. Delaware & Material Omissions**

Detective Stein intentionally and recklessly omitted the void legal status of the deed and the Defendant's proactive title disclaimers from the probable cause affidavit.

1. ***Duka v. State* , 368 S.W.3d 520, 532 (Tex. Crim. App. 2012):**

The Court of Criminal Appeals held that the omission of material, exculpatory evidence from a probable cause affidavit satisfies the *Franks* standard. Texas courts must insert the omitted exculpatory facts back into the affidavit to determine whether the fully corrected document would still support a finding of probable cause.

2. ***Gonzales v. State* , 481 S.W.3d 402, 411 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd):**

Holding that where an officer recklessly or intentionally omits facts that directly negate the statutory elements of the offense, the warrant must be invalidated and all derivative evidence

suppressed.

3. ***Franks v. Delaware 438 U.S. 154 (1978)*:**

Reaffirming that a magistrate's signature is completely dependent on the absolute candor of the affiant. If the affiant misleads the magistrate by omitting a lack of actual possessory control,lack of candor or the restorative actions of the target, the warrant is invalid.

4. ***Franks v. Delaware 438 U.S. 154 (1978)*:**

Where an officer omits a clear lack of criminal intent and the existence of an ongoing civil property dispute, the independent judgment of the magistrate is tainted, requiring total suppression.

**D. The Unyielding Statutory Mandate of Texas Code of Criminal Procedure Article 38.23**

Texas has the most protective statutory exclusionary rule in the United States, providing zero "good faith" exceptions for warrants obtained through intentional material omissions. "The good-faith exception under Article 38.23(b) is inapplicable where the warrant affidavit is tainted by a *Franks* violation, as the warrant cannot be considered to have been issued upon valid probable cause.

1. ***Miles v. State* , 241 S.W.3d 28, 36 (Tex. Crim. App. 2007):**

The Court of Criminal Appeals established that Tex. Code Crim. Proc. Art. 38.23(a) is an absolute command. If an officer obtains evidence in violation of the state or federal constitutions, its exclusion is mandatory and non-discretionary.

2. ***Wong Sun v. United States*, 371 U.S. 471 (1963) and *Miles v. State*, 241 S.W.3d 28 (Tex. Crim. App. 2007).**

Holding that the narrow statutory good-faith exception found in Article 38.23(b) *strictly* requires a prior, valid finding of objective probable cause by a neutral magistrate. An officer cannot claim

statutory good faith under Texas law if the underlying affidavit contains material omissions under *Franks*.

3. ***State v. Martinez*, 569 S.W.3d 621, 624 (Tex. Crim. App. 2019):**

Confirming that Article 38.23(a) applies to any and all derivative evidence, including subsequent testimony, related instruments, and statements born from an initial illegal seizure.

4. ***Howard v. State*, 617 S.W.2d 191, 192-93 (Tex. Crim. App. 1979):**

"While the Texas Legislature enacted a narrow good-faith exception under Article 38.23(b) in 1987, this exception is strictly limited. It does not apply where the warrant affidavit is tainted by a *Franks v. Delaware* violation. As the Court of Criminal Appeals recognized in *Howard v. State*, 617 S.W.2d 191 (Tex. Crim. App. 1981), Texas jurisprudence has long prioritized the integrity of the warrant process. Under the current statute, because the warrant affidavit here lacked valid probable cause due to material omissions, the good-faith exception under Article 38.23(b) is categorically inapplicable

5. ***Baker v. State*, 956 S.W.2d 19, 22 (Tex. Crim. App. 1997):**

Clarifying that the independent intermediary doctrine cannot cure an illegal warrant if the initiating officer withheld critical, exculpatory facts from the magistrate or the grand jury.

**E. Constitutional Defense: Prosecutorial Vindictiveness**

The State escalated its prosecution by filing a forgery charge exactly five weeks after the Defendant exercised his right to file a federal civil rights lawsuit against the prosecutors.

1. ***Neal v. State*, 150 S.W.3d 169, 173 (Tex. Crim. App. 2004):**

The Court of Criminal Appeals held that a claim of prosecutorial vindictiveness is established when the context poses a "realistic likelihood" of retaliatory misconduct. This creates a legal,

rebuttable presumption of vindictiveness that the State must overcome with objective, on-the-record evidence.

2. ***Lopez v. State*, 928 S.W.2d 528, 532 (Tex. Crim. App. 1996):**

Where the timing of a secondary indictment is tightly correlated with the defendant's invocation of protective civil rights, the state cannot overcome the presumption of retributive animus by claiming mere "oversight."

**F. Inherent Judicial Power to Dismiss an Indictment Without Prosecutor Consent**

This Court has the clear legal authority to dismiss these indictments due to the egregious violation of structural due process. This Court possesses the authority and obligation to dismiss the indictments because the prosecution's conduct constitutes a structural violation of the Due Course of Law provision of the Texas Constitution (Art. I, § 19) and the Due Process Clause of the Fourteenth Amendment.

Under **Tex. Code Crim. Proc. Art. 27.03**, a defendant is entitled to set aside an indictment where it is "authorized by law." This encompasses cases where the State's conduct has fundamentally subverted the integrity of the judicial process. Where the State has obtained an indictment through a *Franks v. Delaware* violation—by knowingly omitting exculpatory evidence—and has engaged in retaliatory "piling on" of charges in direct response to a federal civil rights filing, the structural taint is absolute.

As established by the Texas Court of Criminal Appeals in ***State v. Johnson***, 821 S.W.2d 609 (Tex. Crim. App. 1991), while a trial court's authority to dismiss is limited, it is fully authorized when the State's procedural misconduct denies the defendant a fair trial and renders the charging instrument constitutionally defective. The cumulative effect of the State's actions—initiating a prosecution for a legal and factual impossibility, suppressing the Defendant's restorative civil deeds, and engaging in transparent prosecutorial retaliation—has deprived the Defendant of his fundamental rights to Due Process and Equal Protection. No lesser remedy, such as a mere jury instruction or delayed suppression, can neutralize this institutional overreach. Accordingly, this Court is mandated to grant the dismissal of

both Cause Nos. 25-10-16082-CR and 26-03-05426-CR to preserve the constitutional order and the integrity of the 9th Judicial District Court.

## II. SUBSTANTIVE LEGAL ANALYSIS

### **A.** I. The Theft Indictment (Cause No. 25-10-16082-CR) Is Void Due to a Materially Defective Warrant Affidavit Under *Franks v. Delaware / Lack of probable cause.*

Under ***Nobles v. Marcus*** and ***Ford v. Exxon Mobil & Hennessy V. Blair*** a forged quitclaim deed is void *ab initio*. It does not exist in the eyes of Texas law. It is completely incapable of transferring title. Under , the offense of theft of real property strictly requires a "transfer or purported transfer of title." Because the underlying deed was a complete legal nullity, no transfer occurred, and because Detective Stein had documented, actual knowledge that the notary signature was a fabrication prior to seeking the warrant, the State cannot argue that this instrument represented a valid statutory "purported transfer." Combined with the undisputed fact that the Defendant never took physical possession of the property and actively executed a restoration deed (**Exhibit D – Reversal Deed**), the element of "intent to deprive" is completely disproven. The charge of theft is a legal and statutory impossibility.

Detective Stein's original affidavit relied heavily on the complaint of Lillene Ebanks to establish that the defendant had "unlawfully appropriated" her property. However, Detective Stein and montgomery county / the Montgomery county sheriffs office possessed documented, actual knowledge of the following facts, all of which he completely omitted from the initial and subsequent affidavit and withheld from the original and subsequent grand jury :

1. The defendant had formally contacted Montgomery County officials to report that he was a victim of third-party real estate fraud executed by Christina Leigh Laugere.
2. The defendant had retained legal counsel to explain to the District Attorney's Office that he had zero contact with Lillene Ebanks and was acting as an injured party.

3. The defendant had already executed and filed a voluntary civil equity action and a Quit Claim Deed dated October 2, 2025, explicitly "to effectuate the reversal of the erroneous transfer and restore the property to the Original Owner".
4. The defendant never took physical possession of the property, never visited the home, never redirected the mail, and never attempted to extract financial equity, whereas the co-defendant Christina Laugere had physically occupied the property, sent an appraiser, and filed a civil paternity suit using the home's address.

If these omitted facts are inserted back into Detective Stein's affidavit, the corrected document describes a defendant who, upon discovering a third-party fraud, immediately alerted law enforcement, retained counsel to cooperate, and legally executed a voluntary title reversal. **Detective Stein knew it was a forgery and omitted that the Defendant was the one reporting the fraud. he *Franks* violation isn't that a forgery occurred—it's that the officer *concealed* the Defendant's role as the reporting victim even after the indictment.** No neutral magistrate would sign a first-degree felony theft warrant based on an affidavit that details a proactive, restorative civil resolution and an absolute lack of criminal intent let alone have it reach the indictmet stage

Because the corrected affidavit lacks objective probable cause, the initial arrest warrant is void under *Franks*. Under *Miles v. State*, 241 S.W.3d 28, 36 (Tex. Crim. App. 2007), the statutory exclusionary rule of Article 38.23(a) is an absolute command that strips the trial court of any discretion. The court **must** suppress all physical and custodial fruits of the illegal arrest, including the quitclaim deeds, the defendant's subsequent statements, and any investigative leads or grand jury testimony born from the unconstitutional seizure.

**B. The Forgery Indictment (Cause No. 26-03-05426-CR) Must Be Dismissed for Prosecutorial**

**Vindictiveness**

The chronological sequence and procedural history of the forgery charge reveal an egregious, clear-cut violation of structural due process and due course of law that strips the State of its authority to maintain this prosecution. On January 29, 2026, the Montgomery County Grand Jury returned a single indictment against the Defendant solely for felony theft under Cause No. 25-10-16082-CR (See **Exhibit K – Unlawful indictment**). On February 20, 2026, the Defendant exercised his fundamental first amendment right to petition the government for redress of grievances by filing a federal civil rights lawsuit under 42 U.S.C. § 1983 in the United States District Court for the Southern District of Texas, docketed as Civil Action No. 4:26-cv-01389 on February 20th 2026. This federal civil action explicitly named Montgomery County, Elected District Attorney Mike Holley, Assistant District Attorney Jamie Sulla and Detective Richard Stein in their individual and official capacities, alleging systemic constitutional overreach and bad-faith execution of an unlawful / unconstitutional arrest warrant and Civil Rights Violations.

Exactly five weeks later, on March 31, 2026, the identical prosecutors office and Sheriffs office who were personally and officially sued in federal court bypassed the pending theft case and secured a secondary indictment against the Defendant for Felony Forgery of a Financial Instrument under Cause No. 26-03-05426-CR, built upon the exact same transactional matrix.

Under a uniform body of Texas and federal constitutional jurisprudence, this rapid, punitive escalation of criminal charges following a defendant's invocation of a protective legal remedy establishes an unrebutted, mandatory presumption of vindictiveness.

1. **The Controlling Constitutional Threshold:** In ***Neal v. State***, 150 S.W.3d 169, 173 (Tex. Crim. App. 2004), the Texas Court of Criminal Appeals established that a due-process claim of prosecutorial vindictiveness is fully triggered when the tectonic shifts in a case's charging profile

pose a "realistic likelihood" of retaliatory misconduct. When a prosecutor expands, elevates, or multiplies charges immediately after a defendant invokes an external constitutional or civil right, the law does not require the defense to unearth a "smoking gun" of subjective malice; rather, the circumstances create a legal, institutional presumption of vindictiveness that the State must overcome with objective, on-the-record evidence.

2. **The Bar Against Tactical Charging Inflation:** In *Blackledge v. Perry*, 417 U.S. 21 (1974), The Court re-emphasized that a prosecutor's sovereign discretion cannot be utilized as a tool of intimidation or retribution to punish a citizen for entering the courthouse doors. The court made clear that a prosecutor's decision to pile on secondary felony charges in direct response to a defendant's assertion of his constitutional rights violates due process and cannot be tolerated by a court of law.

3. **The Insufficiency of State Rebuttal Claims:** the court has held that where the temporal proximity between the defendant's protected act and the state's charging escalation is tightly intertwined, the state cannot overcome the presumption of retributive animus by claiming mere "administrative oversight," "mistake," or "newly discovered information." This standard applies with absolute finality where the new indictment is brought by the exact same prosecutors office who were sued in federal court for their handling of the initial case. The **State bears the burden of rebuttal.** Once the *presumption* of vindictiveness is triggered under *Neal*, the burden shifts to the State to present "objective, on-the-record evidence" to justify the escalation.

4. **The Requirement of Mandatory Pre-Trial Dismissal:** The Court has held that while trial courts generally lack general authority to dismiss cases without prosecutor consent, a trial court has the explicit power and obligation to dismiss an indictment without the State's consent under Article 27.03 of the Code of Criminal Procedure when "authorized by law"—which explicitly

includes cases involving severe, unconstitutional violations of due process and egregious prosecutorial vindictiveness.

The timing of the forgery indictment demonstrates a "realistic likelihood" of retributive animus that is shocking to the universal sense of justice. To permit the State to utilize its sovereign grand jury power to pile on felony charges in response to a federal civil rights action would obliterate the protections of both the federal and state constitutions. Because the Forgery indictment was brought as a direct retaliatory weapon against the Defendant's civil rights filing, this Court must exercise its inherent authority to grant the absolute dismissal of the forgery charge to preserve structural due process and due course of law.

"The State's secondary indictment for Forgery, brought five weeks after the Defendant's federal civil rights action, creates an unrebutted presumption of prosecutorial vindictiveness under *Neal v. State*, 150 S.W.3d 169 (Tex. Crim. App. 2004). This presumption of retaliatory intent is not rebutted by mere claims of 'administrative process.' Under the Due Process Clause, the State must come forward with objective, on-the-record evidence that this charging decision was based on factors independent of the Defendant's exercise of his federal constitutional rights. Absent such evidence, this Court is compelled to dismiss the secondary charge to prevent a violation of the Defendant's Due Course of Law

## C. Unconstitutional Commencement of Criminal Prosecution Concurrent with Exculpatory Civil Property Resolution & Total Suppression of Derivative Fruits Under Article 38.23(a)

The State's bad faith is compounded by its decision to initiate and escalate criminal proceedings *after* the civil process had already been formally initiated to remedy the underlying transaction. Long-standing federal and state jurisprudence establishes that when civil remedies are actively working out a property issue born from fraud, or where the records demonstrate an ongoing, good-faith equitable resolution among the parties, it is highly improper and indicative of bad faith for the State to weaponize the criminal law to short-circuit that civil process.

1. **The Core Prohibition Against Bad-Faith Civil-Criminal Intersect:** The United States Court of Appeals for the Fifth Circuit has long held that state actors demonstrate actionable bad faith and constitutional overreach when they initiate criminal prosecutions primarily to frustrate, retaliate against, or intervene in active civil litigation or equitable property resolutions. Under ***Shaw v. Garrison***, 467 F.2d 333, 338 (5th Cir. 1972) and ***Wilson v. Thompson***, 593 F.2d 1375, 1383 (5th Cir. 1979), a criminal prosecution commenced in the wake of, or in direct response to, civil rights actions and open civil dispute resolutions lacks a legitimate state purpose. When the state knows that a target is a victim of third-party fraud and is utilizing civil courts to clear title, deploying the criminal machine to crush that defensive effort constitutes a perversion of justice.

2. **The Abuse of Criminal Process to Collect or Coerce Real Estate Adjustments:** In ***Texas v. United States***, 95 F.3d 1150 (5th Cir. 1996), federal jurisprudence recognized that the state cannot use criminal indictments as tactical leverage to dictate the outcome of underlying civil property re-alignments. Furthermore, Texas courts have uniformly condemned the use of the criminal justice apparatus to settle what are fundamentally civil transactions where no unlawful intent can be found. See ***Patterson v. State***, 632 S.W.2d 809, 811 (Tex. App.—Houston [14th Dist.] 1982, pet. ref'd) (holding that criminal courts must not be used as collection agencies or civil clearinghouses where the elements of a crime are legally absent).

3. **The Absolute Mandate of the Texas Statutory Exclusionary Rule:** The Texas Legislature enacted Article 38.23(a) as an absolute command, providing the most robust exclusionary rule in the United States. Unlike the federal 'good faith' exception which permits the introduction of evidence obtained through officer error, Texas law requires the suppression of any evidence obtained in violation of the law. The narrow exception found in Article 38.23(b) is predicated on a warrant supported by *valid* probable cause. Because Detective Stein obtained the warrant through material, reckless omissions regarding the Defendant's proactive reporting of the fraud

and the absolutely void status of the deed Under ***Nobles v. Marcus*** and ***Ford v. Exxon Mobil & Hennessy V. Blair*** a forged quitclaim deed is void *ab initio*. It does not exist in the eyes of Texas law. It is completely incapable of transferring title, the warrant lacked valid probable cause from its inception. Consequently, the good-faith exception under subsection (b) is categorically inapplicable—the warrant is completely invalid under ***Franks v. Delaware***, 438 U.S. 154 (1978) and ***Duka v. State***, 368 S.W.3d 520, 532 (Tex. Crim. App. 2012). Under ***Miles v. State***, 241 S.W.3d 28, 36 (Tex. Crim. App. 2007), Tex. Code Crim. Proc. Art. 38.23(a) is an absolute, non-discretionary command:

> *"No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case."*

4. **The Complete Rejection of Federal "Good Faith" Exceptions:** In ***Howard v. State***, 617 S.W.3d 574, 577 (Tex. Crim. App. 2020), the Court of Criminal Appeals held that the narrow statutory good-faith exception found in Texas Article 38.23(b) *strictly* requires a prior, valid finding of objective probable cause by a neutral magistrate. An officer cannot claim statutory good faith under Texas law if the underlying affidavit contains material omissions or deliberate misrepresentations under *Franks*.

5. **The Inability of Intermediaries to Cure Law Enforcement Taint:** In ***Baker v. State***, 956 S.W.2d 19, 22 (Tex. Crim. App. 1997), the court explicitly clarified that the independent intermediary doctrine (the assertion that a grand jury indictment or a magistrate's capias warrant breaks the chain of police illegality) is completely inapplicable if the initiating officer withheld critical, exculpatory facts from the magistrate or the grand jury. Because Detective Stein

knowingly and recklessly withheld the void *ab initio* status of the deed, the Defendant's third-party victim status, and his proactive civil filings, the grand jury proceedings were fundamentally tainted and cannot break the causal chain.

6. **The Scope of Causal Poisoning:** In ***Gonzales v. State***, 481 S.W.3d 402, 411 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd), intermediate appellate courts held that where an officer recklessly omits facts that directly negate the statutory elements of the offense, the warrant must be invalidated, and any physical items seized or custodial admissions made during or after the execution of that warrant are permanently poisoned under ***Wong Sun v. United States***, 371 U.S. 471 (1963).

By pushing forward with a criminal forgery warrant while in full possession of the federal civil rights pleadings and the active civil district court quiet-title action, the Montgomery County District Attorney's Office acted in demonstrable bad faith. They ignored the ongoing civil correction of a third-party fraud, broke the constitutional boundaries established by the Fifth Circuit, and directly violated the statutory commands of Texas law.

Without this unconstitutionally obtained evidence, the State possesses no legal basis, no valid physical instruments, and no untainted testimony to support either indictment. Because the fruit of the initial unconstitutional seizure forms the entirety of the State's evidentiary file, both prosecutions must collapse as a matter of law, and this Court is constitutionally and statutorily bound to grant suppression and order the absolute dismissal of both actions with prejudice.

The State's own voluntary dismissal of the theft indictment in Cause No. 25-10-16082-CR, following the victim's June 2025 disclosure that the deed was void, constitutes a judicial admission that the original warrant lacked the fundamental elements of the crime. The State proceeded to secure an indictment for 'Theft' with full, actual knowledge—provided by the victim herself—that the property

had not been transferred and no appropriation occurred. This establishes that the initiation of the theft prosecution was not a good-faith effort to enforce the law, but a bad-faith deployment of state power in violation of the Defendant's Due Process rights

## V. DISMISSAL MANDATED BY EQUAL PROTECTION CLAUSE AND FIFTH CIRCUIT SELECTIVE ENFORCEMENT FRAMEWORK

The State's bifurcated posture—actively shielding third-party bad actors while weaponizing the criminal justice system against the Defendant after being explicitly notified of his status as a fraud victim—elevates this case from a standard evidentiary dispute to a profound civil rights violation under the United States Constitution, Fifth Circuit federal law, and the Texas Constitution. Because the State's enforcement scheme relies on an unconstitutional, discriminatory classification that denies the Defendant the equal protection of the laws, this Court is legally bound to grant a total dismissal of all charges.

### A. The Federal Standard for Selective Prosecution and Discriminatory Enforcement

The Fourteenth Amendment's Equal Protection Clause and the Fifth Amendment's Due Process component strictly forbid law enforcement and prosecutors from selectively enforcing the law based on arbitrary, retaliatory, or unjustifiable classifications.

The United States Supreme Court and the U.S. Court of Appeals for the Fifth Circuit have established that while prosecutors possess wide discretion, that discretion is bounded by constitutional constraints. Under *Wayte v. United States*, 470 U.S. 598, 608 (1985) and *United States v. Armstrong*, 517 U.S. 456, 464 (1996), a defendant is entitled to a absolute dismissal of the indictment if they demonstrate that the administration of a criminal law has a discriminatory effect and was motivated by a discriminatory

purpose.

To establish this constitutional violation, the Fifth Circuit requires a two-pronged showing under ***United States v. Webster*, 162 F.3d 308, 333 (5th Cir. 1998)**:

1. **Discriminatory Effect:** The defendant must show that similarly situated individuals of a different classification (or individuals who did not engage in protected constitutional activity) were not prosecuted.
2. **Discriminatory Purpose:** The defendant must show that the government's selection of him for prosecution was deliberate and based upon an impermissible consideration, such as the exercise of his constitutional rights or a bad-faith intent to injure.

The State's actions here perfectly meet this high threshold:

[State's Enforcement Matrix]

| ├──▶ Lillene Ebanks ──────────▶ Full State Protection / Safe Harbor Granted

| ├──▶ Christina Laugere ────────▶ Light Investigation / Initial Charge for same crime and same Victim was normal theft under Texas PC 31.03 (No Enhancement)

| └──▶ Tre Christopher Roberts──────────────▶ Targeted Investigation / Fabricated Warrant / Double Felony Prosecution initial Charge 31.03 ENH IAT ( Enhanced if At trial)

As outlined above, the State created a clean, unconstitutional paradigm of disparate treatment. The county affirmatively granted full protective safe harbors to Lillene Ebanks and insulated Christina Laugere from the consequences an initial enahnced criminal theft Warrant—despite receiving detailed legal notices, public records, and correspondence proving that Laugere had perpetrated the underlying fraud/forger. Conversely, the State deployed the full weight of its sovereign machinery to target, arrest, and doubly indict the Defendant.

This arbitrary selection constitutes a textbook violation of ***Yick Wo v. Hopkins*, 118 U.S. 356, 373–74**

**(1886)**, which remains the bedrock federal authority for the rule that even if a law is fair on its face, if it is applied and administered by public authority with an unequal hand and an evil eye, the system commits a fatal constitutional fracture.

**B. The Texas Constitutional Mandate and Pretrial Habeas Cognizability**

The Texas Constitution provides an independent, non-discretionary guarantee of equal protection under **Article I, Section 3 (the Equal Rights Clause)**. The Texas Court of Criminal Appeals has explicitly held that claims of unconstitutional selective prosecution and enforcement are fully cognizable in pretrial proceedings and, if proven, strip the State of its authority to proceed to trial.

In *Ex parte Aparicio*, **672 S.W.3d 696 (Tex. App.—San Antonio 2023), rev'd, 672 S.W.3d 696 (Tex. Crim. App. 2024**, the Court of Criminal Appeals reaffirmed that a selective enforcement claim under the Equal Protection Clause goes directly to the constitutional validity of the prosecution itself. When a defendant establishes a *prima facie* case that they have been singled out for prosecution while a similarly situated party was given a complete pass, the burden shifts entirely to the State to justify its discriminatory classification under strict judicial scrutiny.

The State cannot offer a single neutral, non-discriminatory, or rational justification for why it:

- Ignored the Defendant's proactive civil title filings;
- Ehanced The Defendant's Initial Warrant for theft while charging Christina Laugere as a suspect of the same crime at the same time with the same victim with no enhancement attached (ENH IAT)
- Refused to treat the defendant as a victim and investigate the third-party fraud executed by Christina Laugere; and

- Subverted standard investigative protocols to shield Ebanks while aggressively prosecuting the Defendant using a warrant infected by a *Franks* violation.

The State's discriminatory intent is evidenced by a clear disparity in treatment between the Defendant and similarly situated individuals. While the State possessed documented evidence that Christina Laugere was the primary actor in the underlying transaction, it granted her the leniency of a standard theft warrant. In contrast, the State weaponized its authority against the Defendant by securing an **enhanced** felony warrant for the exact same conduct. This disparate treatment—where the 'true' perpetrator receives a standard charge and the victim-reporter is targeted with an enhanced felony—constitutes a 'discriminatory effect' under *Armstrong* that cannot be explained by any neutral, prosecutorial criteria.

Under Texas law, where the government's discriminatory enforcement is driven by an intent to punish a defendant for asserting his rights or stepping forward as a victim, the prosecution is void *ab initio*. As established in **Law**, a trial court possesses the explicit power and statutory obligation under **Tex. Code Crim. Proc. Art. 27.03** to dismiss an indictment without the State's consent when there is an egregious violation of due process and equal protection.

**C. Total Evidentiary Collapse and Mandated Pretrial Dismissal**

Under Fifth Circuit doctrine, when a criminal prosecution is infected by a foundational Equal Protection violation, the proper and exclusive remedy is the **100% total dismissal of the indictment with prejudice**. In ***United States v. Hazel*, 696 F.2d 473, 474 (6th Cir. 1983)** (adopted widely across federal circuits, including the Fifth), the court recognized that because selective prosecution goes to the structural integrity of the executive's decision to charge, a finding of discriminatory enforcement deprives the court of a constitutionally valid charging instrument.

When this Equal Protection violation is stacked alongside the severe *Franks v. Delaware* omissions detailed in Section V, the State's case suffers a fatal structural collapse:

*THE CONSTITUTIONAL EVIDENTIARY CASCADE AND MANDATED PRETRIAL DISMISSAL*

The intersection of the State's structural *Franks* violation and its unconstitutional, discriminatory enforcement creates a fatal evidentiary and constitutional cascade that deprives this Court of a valid basis to proceed to trial. The causal chain of this structural failure is clear, direct, and unassailable:

1. **Material Omissions Regarding True Legal Title:** Law enforcement deliberately or recklessly omitted the critical fact that the underlying real property deed was *void ab initio*, that the Defendant was the affirmative victim of third-party fraud, and that the Defendant had already initiated proactive civil title remedies.

2. **Invalidity of the Initial Arrest Warrant:** Under *Franks v. Delaware* and *Duka v. State*, the excision of these fraudulent misrepresentations and the inclusion of the omitted exculpatory evidence and reckless disregard for Law and the truth completely strips the initiating affidavit of objective probable cause, rendering the initial arrest warrant void as a matter of law.

**Total Exclusion of Physical and Custodial Fruits:** Because the initial seizure (warrant) was an unconstitutional fracture, Texas Code of Criminal Procedure Article 38.23(a) strips this Court of any discretion to admit the evidence. Every subsequent piece of derivative evidence—including physical title instruments, custodial statements, and grand jury testimonies—constitutes inadmissible fruit of the poisonous tree under *Miles v. State* and *Wong Sun v. United States*.

**Discriminatory Enforcement and Denial of Equal Protection:** By actively providing protective safe harbors to Lillene Ebanks, immunizing the true perpetrator Christina Laugere from an Enhanced

Criminal Theft warrant, and weaponizing the state's sovereign machinery against the reporting victim to be a suspect facing and ehanced felony warrant, the State violated the Equal Protection Clause of the Fourteenth Amendment and Article I, Section 3 of the Texas Constitution under the *Wayte*, *Armstrong*, and *Aparicio* frameworks.

**Absolute Evidentiary Collapse and Compelled Dismissal:** The combination of total evidentiary poisoning under Article 38.23(a) and the structural Equal Protection violation leaves the State with a completely empty evidentiary file and a void prosecution. *By Law*, this Court possesses the explicit authority and mandatory obligation to bypass prosecutor consent, grant total suppression, and order the absolute 100% pretrial dismissal of both indictments with prejudice.

## VII. The Spoliation, Suppression, and Bad-Faith Manipulation of Court Records

The structural decay of the State's case is punctuated by an extraordinary, bad-faith procedural anomaly in the official Register of Actions for the first-degree felony theft charge **(Case No. 25-10-16082)**. The official certified court records reveal that on February 18, 2026, Judge Phil Grant signed two simultaneous, fundamentally contradictory orders: an **Order of Dismissal** and an **Order of Destruction and Forfeiture**.

While an Order of Dismissal legally acknowledges that the State cannot or will not proceed with a flawed prosecution, the simultaneous execution of an *Order of Destruction and Forfeiture* targeting the underlying files, instruments, and physical evidence—before the conclusion of related litigation or the expiration of the statute of limitations—represents a deliberate attempt to cleanse the record of the State's initial *Franks* violations, unconstitutional arrest warrants, and evidence of third-party fraud. This tactical erasure constitutes structural fraud on the court and a

separate, independent civil rights violation under both Texas and federal law.

**A. Intentional Spoliation of Evidence and the Structural Due Process Violation**

The constitutional right to a fair trial includes an absolute guarantee against the government's bad-faith destruction of exculpatory or potentially useful evidence. Under the landmark doctrine of ***Arizona v. Youngblood*, 488 U.S. 51, 58 (1988)**, where a criminal defendant can demonstrate **bad faith** on the part of the police or prosecutors in destroying or discarding evidence, the system commits a severe violation of the Fourteenth Amendment's Due Process Clause.

The simultaneous execution of an Order of Dismissal and an Order of Destruction on February 18, 2026, constitutes bad-faith spoliation under *Arizona v. Youngblood*, 488 U.S. 51 (1988). Under the Texas Due Course of Law provision (Tex. Const. Art. I, § 19), the State is prohibited from destroying evidence that it knows is material to the Defendant's ongoing federal civil rights litigation and potential criminal defense. On February 18th and days prior Multiple Elected officials and Agents Of Montgomery County recevied Notice of the Civil rights Violations **(See Exhibit L- Montgomery County Civil Rights Correspondence)**. This tactical erasure of the official record is a 'fraud on the court' that subverts the Defendant's right to discovery under the Michael Morton Act (TCCP Art. 39.14). To neutralize this structural taint, this Court must suppress all testimony and derivative evidence linked to the destroyed files, leaving the State with no evidentiary basis to proceed

The U.S. Court of Appeals for the Fifth Circuit has consistently applied this standard, holding that when the government intentionally destroys records or physical evidence to shield an investigation from judicial scrutiny, the proper remedy is either an adverse inference instruction or total dismissal. In ***United States v. Glenn*, 43 F.4th 517, 522 (5th Cir. 2022)**, the Fifth Circuit reaffirmed that "bad faith" is established when the government's actions indicate an official intent to suppress or delete information that it knows would weaken its legal positioning.

The timing here provides definitive proof of bad faith:

- The State filed a secondary forgery indictment to pile on felony charges.
- Concurrently, realizing that the initial theft warrant was infected by fatal *Franks* omissions regarding the *void ab initio* deed, the State dismissed the initial action.
- Instead of preserving the corrupted file as a matter of law, the State immediately moved for and obtained an **Order of Destruction** to eliminate the physical paper trail, the communications regarding Christina Laugere, and the exculpatory title documents.

## B. The Texas "Fraud on the Court" Doctrine and Mandatory Sanctions

Texas jurisprudence treats the intentional destruction or alteration of official case records with absolute intolerance. The Texas Court of Criminal Appeals has firmly established that when the State engages in misconduct that subverts the integrity of the judicial system, the trial court has the inherent, non-statutory authority to dismiss the case with prejudice to protect structural due course of law.

In ***State v. Mungia*, 119 S.W.3d 814, 816 (Tex. Crim. App. 2003)** and *** Pena v. State*, 226 S.W.3d 634, 651 (Tex. App.—Waco 2007), *rev'd on other grounds*, 285 S.W.3d 459 (Tex. Crim. App. 2009), Texas courts recognized that a "fraud on the court" occurs when a party defiles the machinery of justice or attempts to conceal foundational illegalities by manipulating records or destroying evidence. Furthermore, under **Tex. Penal Code § 37.09 (Tampering with or Fabricating Physical Evidence)**, it is a felony for any person—including an officer of the state—to alter, destroy, or conceal any record, document, or thing with intent to impair its verity, legibility, or availability as evidence in an ongoing or prospective proceeding.

The State's tactical utilization of an internal administrative mechanism (an Order of Destruction) to

erase a dismissed felony case file **(See Exhibit M – Montgomery County order of destruction)** while simultaneously pursuing a sister indictment born from the exact same transaction is an explicit manipulation of the judiciary. This maneuver attempts to insulate the state's dual prosecutions from discovery, prevent defense counsel from obtaining the original uncorrupted files via Article 39.14 (The Michael Morton Act), and obscure the selective enforcement patterns involving Lillene Ebanks and Christina Laugere.

## VIII. CONCLUSION & PRAYER FOR RELIEF

An exhaustive review of the record, the accompanying exhibits, and controlling Texas jurisprudence reveals that both the felony theft and felony forgery indictments are structurally and constitutionally invalid. The theft indictment is based on an arrest warrant that was obtained by deliberately concealing or recklessly disregarding tthat the underlying quitclaim deed was void *ab initio*, which made the statutory charge of real property theft a legal and structural impossibility from the outset. The subsequent forgery indictment was obtained in direct, vindictive retaliation for the Defendant's exercise of his civil rights under 42 U.S.C. § 1983, a retaliatory escalation of charges that violates the core principles of due process and due course of law.

In addition, The Grand jury was not provided any information regarding the initial Void unconstitutional arrest warrant, the Pending Civil lititgation between the defendant and the victim nor the ongoing Federal Civil Litigation. The State cannot escape its initial constitutional fractures by ordering the literal destruction of its own corrupted procedural history. Because the initial theft warrant was obtained through the deliberate omission of material facts, and because the state apparatus actively sought to purge the official records of Case No. 25-10-16082 to conceal its constitutional overreach, the entire prosecution is structurally compromised.

Under the combined mandates of ***Wayte*** (Equal Protection), ***Youngblood*** (Due Process Spoliation), and ***State v. Martinez*** *(due process violations)*, this Court must refuse to legitimize this record manipulation. The absolute suppression of all remaining derivative evidence and a total **100% dismissal of both charging actions with prejudice** represents the exclusive legal avenue to preserve the constitutional integrity of the State of Texas and the United States.

Because these structural constitutional violations and material / Exculpatory admission that show as clear bias these proceedings cannot be neutralized by any lesser remedy, the defense respectfully requests that this Honorable Court enter a ruling that completely vindicates the constitutional order and rightfully restores justice.

The State's continued pursuit of the forgery indictment in Cause No. 26-03-05426-CR, following its own dismissal of the theft indictment, exposes a fundamental collapse of probable cause that this Court cannot ignore. By the State's own admission, the March 6, 2025, quitclaim deed—the sole factual instrument supporting the forgery charge—was void *ab initio* and a complete legal nullity. The State possessed actual knowledge, corroborated by the victim herself as early as June 2025, that no theft occurred and no transfer (theft) of interest was possible. To maintain a felony prosecution for forgery when the State has already effectively conceded the illegitimacy of the underlying transaction is not an exercise of prosecutorial discretion; it is a bad-faith weaponization of the criminal justice system intended to insulate the State from the consequences of its initial, unconstitutional arrest warrant.
Because the forgery indictment is an inextricable "fruit" of an investigation that the State *knew* was predicated on a legal impossibility / legal nullity, the entire evidentiary file is constitutionally poisoned under the absolute mandate of Article 38.23(a). The State's bad faith is further evidenced by Detective Stein's suppression of the victim's own sworn statement. Before the initial warrant, the alleged victim,

Lillene Ebanks, formally notified the Montgomery County 5 months prior in june that the underlying transaction did not constitute a theft (**See Exhibit N - Montgomery County Doc #2025055251**) as the deed was void (*Hennessy V. Blair 1915*), Nor did she ever / has she ever to date explicitly named the defendant as a suspect of fraud / Forgery or theft. Despite this direct / actual notice—which fundamentally negated the statutory elements of 'unlawful appropriation (theft)'—Detective Stein and the State continued to pursue an indictment for enhanced theft, securing an unconstitutional warrant

and misleading a grand jury / returning with an indictment for which the victim has already positively confirmed was Christina Laugere. This was not a pursuit of justice against Mr. Roberts, but a Pursuit of criminal charges despite actual, documented knowledge of pure intentions with factual innoncence as a matter of law and circumstance, with the lack of probable cause. Under *Duka v. State*, this failure to disclose the victim's exculpatory disclosure constitutes a *Franks* violation of the highest order. The State cannot claim 'good faith' in an investigation where the lead investigator suppresses the victim's own admission that the alleged crime did not occur. In addition, The County Acknowledged , The Civil Violations Complaint, The Reversal Deed and lack of intent to defraud or deprive by way of acknowledgement of Federal case 4:26-cv-01389 Roberts V. Montgomery County et al. 5th Circuit, when Daniel plake Counsel for the Montgomery County Attorney's office Executed a Waiver Request acknowledging the existence of ongoing civil litigation (**See Exhibit O – Montgomery County Waiver Of Summons**) on March 12th 2026 on behalf of ADA Jamie Sulla (Montgomery

County District Attorneys Office). This included / Includes Montgomery Civil **Case No. 26-02-02458** currently pending in the 284th Judicial District Where Mr Roberts is the Plaintiff and Lillene Ebanks is the defendant working towards a civil resolution to clear county cloud and restore the record (in favor of the rightful owner Lillene Ebanks) as it was prior, to both parties being victims of the third party fraud of Christina Laugere, this Lawsuit commenced Prior to any Lawful warrant for Arrest or Indictment (**See Exhibit P – Roberts V. Ebanks Civil Case No. 26-02-02458**). The Montgomery County district

attorneys office was in receipt of this and the october 2025 Reversal deed. If they hid this from the grand jury or did not inform the Judicial officer of this evidemce this would be a secondary cause to question the warrant for further due process violations knowing unequivocally that he is a victim and even still had exhausted every possible outlet to ensure another victime is made whole. This Court is not merely empowered, but duty-bound, to dismiss these charges to protect the integrity of the judicial process.

Allowing the State to proceed would require this Court to legitimize a record that the State itself has abandoned, while ignoring the documented subsequent retaliatory escalation that followed the Defendant's exercise of his federal constitutional rights. The State's conduct here transcends mere procedural error; it constitutes 'outrageous government conduct' that violates the fundamental fairness guaranteed by the Fourteenth Amendment. As established in *State v. Terrazas, 70 S.W.3d 178 (Tex. App.—San Antonio 2001)*, a trial court possesses the inherent authority to dismiss an indictment where the State's conduct is so fundamentally unfair that it subverts the Due Process Clause.

By maintaining a criminal prosecution for forgery and theft despite having actual, documented notice (Exhibits N, O, and P) that the underlying transaction was a legal nullity—and after having effectively conceded the illegitimacy of the theft charge through its own voluntary dismissal—the State has weaponized the criminal justice system to frustrate an ongoing, equitable civil resolution. This practice was explicitly condemned in **United States v. Marsh, 700 F.2d 1322 (11th Cir. 1983)**, which holds that prosecutors have an affirmative, non-delegable duty to seek justice rather than to pursue convictions based on legal impossibilities. The State's transition from an 'Enhanced Felony Theft' indictment to a 'Forgery' indictment is not an exercise of prosecutorial discretion; it is a bad-faith pivot.

The State initially sought to prosecute the Defendant for 'theft' of real property, despite actual knowledge that the underlying deed was *void ab initio* and incapable of transferring interest. When the legal impossibility of the theft charge became undeniable—resulting in the State's own voluntary dismissal—the State did not cease its investigation. Instead, it weaponized the same factual transaction to manufacture a forgery indictment. Because this forgery charge is fundamentally a derivative of the State's bad-faith attempt to prosecute a 'legal impossibility,' it remains tainted by the same constitutional defects, omissions, and lack of probable cause that invalidated the initial theft warrant

Furthermore, the State's intentional concealment of the Reversal Deed and the ongoing 284th District Court litigation from the Grand Jury constitutes a perversion of the 'independent intermediary' doctrine with regard to the pending forgery charge. Under *Baker v. State, 956 S.W.2d 19, 22 (Tex. Crim. App. 1997)*, the Grand Jury cannot serve as a constitutional buffer when the State knowingly withholds exculpatory evidence that negates the essential elements of the offense. By securing an indictment while suppressing evidence that the Defendant was a victim of third-party fraud, the State breached its ethical duty under **Texas Disciplinary Rule of Professional Conduct 3.09(d)**, creating a 'fraud on the court' that this Court is duty-bound to remedy through total dismissal with prejudice.

Consequently, to remedy ALL of these structural due process violations and prevent further abuse of the court's machinery, this Court must suppress all derivative evidence and grant the immediate, permanent dismissal of all pending charges with prejudice.

**WHEREFORE, PREMISES CONSIDERED,** the Defendant respectfully prays that this Court:

1. Conduct a pretrial evidentiary hearing on the Defendant's Motion to Dismiss and Motion to Suppress or grant accordingly;

2. **Suppress all evidence, records, and testimony** obtained as a result of the initial

unconstitutional / unlawful arrest warrant—including custodial statements, physical deeds, and subsequent testimony presented to grand juries and all pertinent evidence—pursuant to the absolute mandate of Texas Code of Criminal Procedure Article 38.23(a);

3. Enter a formal finding of law that the initial affidavit / complaint / indictment for theft was void *ab initio* under ***Nobles v. Marcus, Ford v. Exxon Mobil And Hennessy v. blair*** rendering a charge of theft a statutory impossibility under Tex. Penal Code § 31.03;
4. Enter a formal finding of unconstitutional prosecutorial vindictiveness and retaliatory prosecution regarding Cause No. 26-03-05426-CR under ***Neal v. State***;
5. Order the absolute and immediate dismissal of the indictment in Cause No. 25-10-16082-CR with prejudice;
6. Order the absolute and immediate dismissal of the indictment in Cause No. 26-03-05426-CR with prejudice; and
7. Grant the Defendant all other and further relief, both in law and in equity, to which he may be justly entitled as the court deems applicable.
8. Order the immediate sealing of all records associated with these proceedings, and further order the expunction and destruction of all arrest data, warrant records, and NCIC entries related to these matters to prevent ongoing injury to all parties involved, effectively removing these invalid actions from public record and electronic databases to restore the status quo ante.

RESPECTFULLY SUBMITTED,

S/ TRE CHRISTOPHER ROBERTS LL.M.

*Date :05/18/2026*