Tre Christopher Roberts LL.M.
Plaintiff
1525 Aviation Blvd #213
Redondo Beach, CA 90278
Chrisrobertslawesq@gmail.com
(310)421-7058

United States Courts
Southern District of Texas
FILED

JUN 10 2026

Nathan Ochsner, Clerk of Court

**UNITED STATES OF AMERICA**
**FEDERAL COURT**

**5TH CIRCUIT**

**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| TRE CHRISTOPHER ROBERTS<br>Plaintiff,<br>vs.<br>MONTGOMERY COUNTY ET AL.<br>Defendants. | Case No.: 4:26-cv-01389<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE** |

Dated: 06/10/2026

JUDGE :HON. GEORGE C. HANKS JR.

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE (DOC. 104)**

**TO THE HONORABLE JUDGE OF SAID COURT:**

Plaintiff Tre Christopher Roberts, operating pro se, respectfully files this Opposition to Defendants' Motion to Strike (Doc. 104). Defendants' motion is a transparent, tactical maneuver designed to blind this Honorable Court and suppress an unassailable chronological record of ongoing, de facto municipal policy ratification, retaliatory prosecution, and fraud on the court.

Defendants ask this Court to use Federal Rule of Civil Procedure 12(f) to strike Plaintiff's Notice of Ongoing Retaliatory Conduct (Doc. 99), Notice of Fraud on the Court (Doc. 101), and the Montgomery County Actual Notice, Communication, and Monell Liability Log (Doc. 103) under the false, hyper-technical pretense that they are "unauthorized sur-replies". They are not. They are contemporaneous, real-time supplementations of the record documenting ongoing, active constitutional injuries engineered by the Defendants after this federal civil rights suit was initiated.

For the reasons set forth below, Plaintiff respectfully requests that Defendants' Motion to Strike be denied in its entirety.

## MEMORANDUM OF LAW & ARGUMENT

### I. Plaintiff's Challenge to the Legal Basis for Striking Crucial Evidentiary Logs Under Rule 12(f)

Defendants rely on Federal Rule of Civil Procedure 12(f) to strike Plaintiff's filings. However, it is a well-settled principle of Fifth Circuit jurisprudence that motions to strike are disfavored, viewed as a drastic remedy, and are rarely granted unless the challenged matter has no possible

bearing on the subject matter of the litigation. Augustus v. Board of Public Instruction, 306 F.2d 862, 868 (5th Cir. 1962).

Furthermore, Rule 12(f) applies strictly to pleadings (complaints, answers, etc.). The documents Defendants target—specifically the Monell Liability Log (Doc. 103)—are evidentiary summaries, chronological transaction logs, and notices of ongoing conduct, not pleadings. Striking highly specific, fact-bound, and textually supported administrative notices is procedurally improper under Rule 12(f).

## II. The Challenged Filings Present Vital and Material New Information Rather Than Duplicative Arguments

Defendants argue that Documents 96, 99, 101, and 103 are merely duplicative attempts to re-argue Plaintiff's initial Opposition to their Motion to Dismiss. This is yet another active mischaracterization of the record. By filing Document 103 (the Monell Liability Log), Plaintiff is not expanding legal briefs without permission; Plaintiff is fulfilling the right to supplement the record with contemporaneous evidence of a continuous tort. These filings do not merely repeat arguments; they anchor devastating new factual developments that occurred after the initial response deadline:

- **The March 12, 2026 Unified Corporate Knowledge Fact:** Document 103 highlights a critical judicial admission by the Defendants. On Page 2 of their own Motion to Dismiss, the County Attorney's office textually admits that Defendant Sulla executed a Waiver of Service of Summons via defense counsel on March 12, 2026.
- **The Post-Service Retaliatory Indictment:** Nineteen days after receiving this full federal civil rights complaint, the Hennessy v. Blair title authorities, and the exculpatory Ebanks

Affidavit, Montgomery County's criminal division went into a grand jury room on March 31, 2026, to secure a secondary forgery re-indictment. The fact that they executed a secondary forgery indictment nineteen days after their civil counsel signed a federal waiver of service on March 12, 2026, is fresh, highly relevant evidence of unified corporate knowledge and retaliatory intent.

- **The Relevance to Monell Jurisprudence:** This sequence of events completely shatters the County's core defense that its civil litigation team and criminal prosecutors operate in isolated, uncoordinated "bureaucratic silos". It establishes a unified corporate knowledge timeline. The fact that they proceeded with a secondary, legally impossible prosecution after being served with a federal civil rights lawsuit is direct, real-time evidence of a conscious corporate municipal policy or custom of deliberate indifference and retrospective ratification under *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985).

Crucially, the challenged logs and notices contain uncontradicted, textually verified proof that the entire corporate and institutional leadership of Montgomery County possessed synchronized, actual notice of comprehensive exculpatory evidence long before any criminal track was manufactured. This administrative audit trail establishes that as of October 2, 2025—months prior to any initial indictment or subsequent re-indictment—Plaintiff had already formally alerted the Montgomery Central Appraisal District and the Montgomery County Clerk to the underlying title cloud, proactively moving to rectify the public record and voluntarily restore the property interest to its rightful owner. Under black-letter Texas law, this documented remediation and immediate identity disclosure completely obliterates the essential *mens rea*—the specific 'intent to deprive' or 'intent to defraud'—required to support any colorable charge

under Texas Penal Code §§ 31.03 or 32.21. Because this paper trail demonstrates that there is currently no *mens rea*, and has not been since October 2, 2025, these logs are not duplicative arguments; they are vital, real-time logging mechanisms documenting that the county's final decision-makers are actively maintaining a prosecution built on a known legal fiction in direct violation of *Sanders v. English*, 950 F.2d 1152 (5th Cir. 1992). Striking these entries would improperly blind the Court to a core component of Plaintiff's *Monell* custom and ratification framework.

Defendants' Motion to Dismiss (Doc. 76) contains a profound omission fraud and fraud on the court. In attempting to establish a valid state-court criminal chain, Assistant County Attorney Adam Anderson attached the March 31, 2026 indictments and warrants (Doc. 76, Exs. 1–4), but completely omitted and suppressed the existence of the standing, finalized state court Order of Dismissal, Destruction, and Forfeiture signed on February 18, 2026.

This state court order legally condemned the underlying transactional instruments to ash. Standing before a federal jurist while intentionally hiding a state court mandate that explicitly destroyed the corpus delicti of the crime defendants are currently prosecuting constitutes a fraud on this Court. Plaintiff has attached this certified state court destruction mandate and defendants current related "Re-indictment" as **Exhibit A** Combined to this Opposition.

This factual alignment of unified corporate knowledge is reinforced by the immutable public tracking metrics hardcoded across the state court record. A structural examination of **Attached Exhibit A** reveals that the original October 1, 2025 Theft Complaint, the March 31, 2026 Forgery Indictment, and Judge Grant's February 18, 2026 Forfeiture Mandate all share the exact same repository identifier: **Agency # 25A176876**. Furthermore, the specific target instrument underpinning the secondary re-indictment is explicitly designated as Montgomery County Clerk

**Doc #2025022380**. Because **Doc #2025022380** was legally confiscated under **Agency # 25A176876**, it was part of the identical evidence pool that this Court judicially stripped of legal existence/significance and commanded to be processed for destruction or forfeiture on February 18, 2026. The State's attempt to split these files procedurally is a fiction exposed by their own matching tracking numbers.

Beyond the suppression of this Court's standing destruction mandate, the moving parties' probable cause narrative relies on an even more profound, systemic omission fraud. In securing the March 31, 2026 re-indictment, moving prosecutors completely insulated and isolated the Grand Jury panel from the unassailable public record of title correction and civil litigation. The Grand Jury file contains absolutely no mention or evidence of the proactive electronic audit trail and voluntary interest reversal deed communicated to the Montgomery County Clerk on October 2, 2025—months before any criminal indictment was ever returned.

Furthermore, the State has completely suppressed the existence of the ongoing civil litigation actively pending in the 284th Judicial District Court to clear the county title cloud under *Hennessy v. Blair*. Deliberately withholding these dispositive public records and ongoing title-clearing actions from the Grand Jury panel constitutes a secondary bad-faith gatekeeping fraud designed to engineer a false veneer of criminal intent. Striking Plaintiff's supplemental logs would actively assist the Defendants in hiding this multi-layered evidentiary suppression from federal judicial review. Because the Defendants have omitted and have completely failed to address or respond to the reality of this destruction order, Plaintiff's filings present highly material, uncontradicted evidence that completely shapes the evaluation of municipal liability.

Plaintiff is not re-arguing old issues. Plaintiff is documenting the fact that nineteen days after the County executed a waiver of service acknowledging this civil action and its contents herein,

disregarded it, went out and committed a brand-new, retaliatory constitutional violation. Striking these logs or notices does not protect the Court's schedule; it would actively permit the Defendants to continue to hide their ongoing bad-faith maneuvers and systemic omissions from judicial review. These material adjustments complement the unassailable timeline established in the operative complaint and the response framework outlined in Plaintiff's response to Defendant's motion to dismiss.

## III. The Necessity of Supplementation for the Court's Evaluation of the Independent Intermediary Shield

Defendants have asserted the independent intermediary doctrine to argue that the March 31, 2026 grand jury indictment breaks the chain of causation and insulates them from liability.

Under the controlling Fifth Circuit framework established in *Hand v. Gary,* 838 F.2d 1420, 1427 (5th Cir. 1988), the independent intermediary defense is completely obliterated where initiating actors and prosecutors isolate the grand jury panel from the truth by executing a bad-faith gate keeping fraud.

The filings Defendants seek to strike contain the exact, underlying evidence showing that the defendants as a whole possessed personal, actual notice of a finalized state court Order of Dismissal, Destruction, and Forfeiture signed on February 18, 2026 and exculpatory evidence, which legally condemned and nulified the underlying transaction instruments and the current "Re-Indictment". Sulla personally signed the motion to dismiss that initial case as displayed in the **attached Exhibit A**, which was executed the same day as the Order for Destruction and Forfeiture of evidence, also displayed in the **attached Exhibit A**.

Hiding a standing state court judicial mandate from the secondary grand jury panel fundamentally corrupted the integrity of the proceeding. Plaintiff has an ongoing right and duty to bring this gate keeping fraud to the attention of this Court. Striking Document 103 would allow Defendants to continue to artificially engineer a false veneer of probable cause on the federal civil docket while suppressing the single most critical adjudicative fact of the entire procedural record.

Consequently, the material contained within the challenged logs and notices directly targets the absolute erasure of the state's independent intermediary defense under the controlling mandates of *Baker v. State*, 956 S.W.2d 19 (Tex. Crim. App. 1997), and *State v. Stevens*, 235 S.W.3d 192 (Tex. Crim. App. 2007), while establishing a textbook Fourth Amendment violation under the binding jurisprudence of the Fifth Circuit in *Sanders v. English*, 950 F.2d 1152 (5th Cir. 1992). Striking these records would fundamentally blind this Court to a documented gatekeeping fraud under *Baker*, where the defendants isolated the grand jury from a standing state-court destruction mandate and probative exculpatory evidence, while simultaneously permitting an unconstitutional collateral attack on a finalized judicial order in direct violation of the absolute collateral estoppel bar established in *Stevens*. Furthermore, these entries demonstrate that the defendants' choice to remain silent and maintain a criminal docket built upon a judicially extinguished legal nullity constitutes an active, ongoing *Sanders* violation occurring in real time. Because this unconstitutional maintenance of a baseless prosecution compounds liability by the hour, the moving parties cannot use a procedural motion to strike under Rule 12(f) to scrub these controlling constitutional barriers and binding Fifth Circuit authorities from the federal record.

**IV. The Impact of Striking Filings on Pro Se Access to the Court and Effective Litigation of Civil Rights Claims**

Plaintiff is navigating these proceedings pro se. It is well-established within the Fifth Circuit that pro se filings must be held to less stringent standards than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

Defendants' true operational anxieties are laid bare on Page 4 of their Motion to Strike, where Assistant County Attorney Adam Anderson explicitly states: "*Plaintiff's attempt to influence his criminal case prosecution by utilizing his civil case as a cudgel is inappropriate and should be stopped.*" (Doc. 104 at pg. 4). This framing is a profound mischaracterization of the chronological record. Plaintiff's federal civil rights action was initiated on February 20, 2026 (Doc. 1), weeks *before* Montgomery County line prosecutors rushed into a grand jury room on March 31, 2026, to engineer a secondary forgery indictment. A civil rights lawsuit cannot be deployed as a "cudgel" against a state-level criminal proceeding that did not even exist when the federal complaint was filed.

Rather, the record demonstrates that it is the *Defendants* who are actively utilizing the machinery of the state criminal courts as an actual retaliatory cudgel to neutralize a valid, pre-existing federal civil rights claim. Labeling a pro se litigant's petition for a redress of ongoing constitutional grievances as an "inappropriate attempt to influence" a prosecution reveals exactly what Defendants are terrified of. "Defendants' attempt to characterize a federal civil rights complaint as a 'cudgel' is an ironic projection of their own misuse of the state criminal machinery to retaliate against a federal plaintiff. They are desperate to hide the reality of the parallel state docket (Cause No. 26-03-05426-CR). As documented in Plaintiff's ripe state court filings—including his Notice of Submission (Doc. 7) and Notice of Structural Incoherence (Doc. 8)—the

state prosecution is a procedural nullity. Moving prosecutors are currently attempting to sustain a first-degree felony indictment using the exact transactional instruments that the state court already ordered destroyed or forfeited pursuant to a finalized, signed judicial mandate on February 18, 2026 Attached as **Exhibit A**, while additionally suppressing highly probative exculpatory evidence.

Defendants are asking this Court to enforce a communications and docket blockade under Rule 12(f) not to protect the court's schedule, but to preserve a false, artificial veneer of probable cause. They need to insulate their final top-tier policymakers (the County Judge, County Attorney, Sheriff, Auditor, and Commissioners) from receiving actual, documented notice that line subordinates are maintaining a legally impossible, bad-faith prosecution built on judicially extinguished evidence. Furthermore, the record conclusively establishes that the entire corporate leadership and top-tier policy making infrastructure of Montgomery County—including the County Judge, the County Attorney, the Sheriff, the County Auditor, and the individual County Commissioners—have now been directly, explicitly, and formally notified of this widespread escalating and constitutional crisis and ongoing bad-faith prosecution.

Despite receiving actual, synchronized notice and a black-letter record demonstrating that line subordinates are actively maintaining a legally impossible prosecution built on judicially extinguished evidence, the county's final decision-makers have chosen to maintain a posture of total administrative silence and deliberate or callous indifference (detailed in Montgomery County Actual Notice, Communication, and Monell Liability Log Doc 103). This collective choice to look away and let the constitutional injury continue does not display a simple bureaucratic delay; it constitutes an active municipal ratification of a continuous tort, permanently hardcoding *Monell* liability onto the county's footprint. Defendants' request to

strike these entries in full is a transparent effort to avoid full-blown civil discovery under Federal Rule of Civil Procedure 26. The material contained within Documents 96, 99, 101, and 103 is not scandalous, impertinent, or prejudicial; it is highly structured, textually verified, and complete dispositive proof of the ongoing Monell claims pending before this Court.

## V. Plaintiff's Physical Incarceration and Defendants' Tactical Blockade Establish Good Cause, Defeat Untimeliness, and Form an Essential Component of Monell Fact-Development

Defendants argue that Plaintiff's supplemental submissions are untimely under local rules. This argument deliberately ignores the inequitable reality that any alleged procedural delay was directly engineered by the Defendants' own hand. At the hands of the Defendants, Plaintiff was subjected to a 30-day period of physical incarceration, during which his ability to conduct legal research, access files, monitor the civil docket, and file timely pleadings was fundamentally obstructed.

This systemic obstruction is verified by the official federal docket sheet. Between May 11, 2026, and June 8, 2026, no fewer than eleven (11) judicial notices, memoranda, and orders were returned to this Court as "Undeliverable" (Docs 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 94, 95, 97, 98, 100, 102) because Plaintiff was in physical confinement at the hands of the Defendants and has been kept outside his jurisdiction of residence at the hand of the defendants. It is a profound perversion of equity for Defendants to lock Plaintiff in a jail cell, intercept and cause the non-delivery of his legal mail, impair his capacity to meet filing deadlines or monitor the

active docket, and then rush to a federal court demanding his civil rights claims be struck because they are "untimely".

Under Federal Rule of Civil Procedure 6(b)(1)(B), a court may extend filing deadlines for "good cause" if the party failed to act because of "excusable neglect." The Fifth Circuit explicitly recognizes that severe, externally imposed restrictions—most notably physical incarceration and the deprivation of liberty—constitute an exceptional circumstance satisfying both good cause and excusable neglect. See, e.g., Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993); see also United States v. Clark, 193 F.3d 845, 846-47 (5th Cir. 1999).

Crucially, Defendants' demand for an order restricting case-related correspondence and cutting off administrative channels represents a transparent attempt to evade municipal responsibility by blocking contact with the County's infrastructure. Under controlling Fifth Circuit and federal standards, pro se plaintiffs have an absolute right to file non-argumentative notices of factual developments and real-time records at any time.

**Factual notices are not sur-replies; they are real-time, continuous logging mechanisms permitted to update a court on dynamic, ongoing injuries. See Federal Rule of Evidence 201(f) (matters of judicial notice may be brought to the court's attention at any stage of the proceeding). Informing public officials in their professional capacity of an escalating liability footprint is completely lawful and protected by the First Amendment right to petition the government for a redress of grievances.**

Defendants' reliance on this Court's prior orders (Docs 62, 67) in attempt to justify a blanket strike under Rule 12(f) is a fundamental misinterpretation of this Court's directives and intention. In addition, Plaintiff has since complied with the court's instruction. The heart of this

Court's prior orders was aimed strictly at preventing the submission of highly repetitive, procedurally premature, or purely administrative documents. The Court did not issue a structural prohibition against the filing of highly substantive, fact-bound evidentiary summaries,logs or notices. Documents 96, 99, 101, and 103 are not repetitive iterations of old arguments; they are legally permissible, highly detailed record supplementations capturing critical factual relevant and ongoing developments—specifically the entry of a state-court destruction order and the subsequent retaliatory grand jury re-indictment on March 31, 2026—that completely redefine the Monell custom framework.

As a matter of law, the Fifth Circuit commands that where a pro se litigant's supplemental filings provide highly substantive, clarifying factual contentions regarding a Monell policy or custom, the interest of justice dictates that the documents remain on the active docket for review on the merits. See Eason v. Thaler, 14 F.3d 8, 9 (5th Cir. 1994) (emphasizing that pro se claims must not be dismissed or struck before the litigant is provided a full opportunity to develop the factual and material record); see also Green v. McKaskle, 788 F.2d 1116, 1120 (5th Cir. 1986) (holding that district courts should look beyond technical pleading omissions to allow pro se litigants an opportunity to expand upon and solidify the factual core of their civil rights claims). Because these filings are targeted notices of real-time custom ratification rather than technical sur-replies, and because any timing deviations were directly caused by Plaintiff's unlawful confinement, equity demands that they remain on the active docket.

Ultimately, Defendants' argument treats Plaintiff's procedural timeline as a simple failure to read the calendar. This narrative is completely exploded by the official federal docket sheet, which objectively demonstrates that no fewer than eleven separate court notices and judicial orders were returned to the Clerk as "Undeliverable" precisely because Plaintiff was physically

confined by the very municipal infrastructure trying to strike his filings. Under long-standing equity and Fifth Circuit law, a defendant cannot lock a plaintiff in a jail cell, cause the systemic non-delivery of his legal mail, and then complain to a federal judge that his responsive filings are late.

The U.S. Supreme Court has explicitly established that a litigant is entitled to equitable tolling and the suspension of procedural deadlines where he has been pursuing his rights diligently and "some extraordinary circumstance stood in his way and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010); Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005). Furthermore, under the Pioneer standard governing Federal Rule of Civil Procedure 6(b)(1)(B), the determination of "excusable neglect" is at its core an equitable inquiry that must take into account "the danger of prejudice... the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993).

Applying this framework, the Fifth Circuit has consistently held that severe, externally imposed physical blockades—most notably continuous physical confinement and the absolute deprivation of access to incoming and outgoing legal mail—constitute an exceptional, control-stripping circumstance that legally satisfies both good cause and equitable relief. See Teemac v. Henderson, 298 F.3d 452, 457 (5th Cir. 2002) (recognizing that equitable tolling is fundamentally mandated where the plaintiff is actively "prevented from asserting his rights by some kind of inequitable conduct on the part of the defendant"); Fisher v. Johnson, 174 F.3d 710, 715 (5th Cir. 1999) (holding that structural external forces beyond a prisoner's control directly trigger equitable deadline relief).

Because any alleged procedural timing variations were directly engineered by the moving parties' own heavy-handed, liberty-depriving conduct, the interest of justice mandates that Plaintiff's substantive records remain on the active docket. Defendants' true anxieties are laid bare on Page 4 of their Motion to Strike, where Assistant County Attorney Adam Anderson explicitly states: *"Plaintiff's attempt to influence his criminal case prosecution by utilizing his civil case as a cudgel is inappropriate and should be stopped."* (Doc. 104 at pg. 4). This framing is another profound mischaracterization of the chronological record. Plaintiff's federal civil rights action was initiated on February 20, 2026 (Doc. 1), weeks *before* Montgomery County line prosecutors rushed into a grand jury room on March 31, 2026, to engineer the secondary forgery indictment.

A civil rights lawsuit cannot be deployed as a "cudgel" against a state-level criminal proceeding that did not even exist when the federal complaint was filed. Rather, the record demonstrates that it is the *Defendants* who are actively utilizing the machinery of the state criminal courts as a retaliatory cudgel to neutralize a valid, pre-existing federal civil rights claim. Labeling a pro se litigant's petition for a redress of ongoing constitutional grievances as a "cudgel" confirms that Defendants view Document 103 and its unassailable evidence—specifically the state court's standing February 18, 2026 destruction mandate—as a direct threat to their false narrative of probable cause. They are asking this Court to enforce a docket and communication blockade not to preserve order, but to insulate top-tier policymakers from acquiring documented knowledge of subordinates executing and maintaining a bad-faith prosecution.

**<u>VI. THE MOVING PARTIES' UNTIMELINESS ARGUMENT IS FACTUALLY FRIVOLOUS AND DISPROVED BY THE COURT'S STANDING STAY ORDER (DOC. 92)</u>**

In the **"Argument"** section of **Document 104** (the Defendants' Motion to Strike), specifically under the sub-heading **"Plaintiff's supplemental response is untimely and prejudicial."** In that paragraph, Counsel Adam Anderson explicitly claims:

> "Plaintiff filed his response on May 21, 2026. Plaintiff has now filed additional sur-replies (Docs 96, 99, 101, and 103) on May 26, June 4, June 5, and June 9, respectively, which are untimely and were filed without leave."

Beyond the aforementioned applicable equitable protections of Plaintiff's physical incarceration and involuntary confinement to this jurisdiction, Defendants' primary procedural attack—that Plaintiff's updates are "untimely" under local rules or Federal rules of Civil Procedure—is a demonstrable misrepresentation of the active docket. Defendants conveniently, and in a clear display of bad faith, ignore that on May 15, 2026, this Court entered an explicit, unambiguous Order Staying Case signed by Magistrate Judge Christina A. Bryan (Doc. 92). <u>Plaintiff has attached a copy of this standing Federal Court Stay Order as **Exhibit B** to this Opposition</u>.

Document 92 specifically references Plaintiff's physical confinement in the Montgomery County Jail and mandates: **"It is further ORDERED that this case is STAYED pending a ruling on Defendants' Motion to Dismiss."** (Doc. 92 at pg. 2).

It is an elementary principle of federal procedure that the entry of a general judicial stay structurally stops the procedural clock, suspends the application of localized responsive windows, and terminates active litigation deadlines. <u>In fact, the official Clerk docket ENTRY LINE for Document 92 explicitly explicitly states **"Deadlines terminated"** prior to even opening the underlying order. Because this Court froze the case and terminated all open periods</u>

on May 15, 2026, prior to the expiration of standard responsive timelines under the local rules, there currently are no active operational deadlines to violate.

Defendants' insistence on applying a standard applicable 21-day rule calculation while a binding judicial stay order remains actively on the docket is procedurally absurd and what can only be percevied as a further or additional bad faith attempt to mislead this Court. Because this Court's standing Stay Order (Doc. 92) structurally terminated all active deadlines, Defendants' primary untimeliness argument is not only factually frivolous, but it represents a profound lack of candor regarding the active state of the master docket. While this Court has previously and appropriately cautioned Plaintiff regarding standard procedural boundaries, the principles of equal justice under the law dictate that a license to practice law is not a license to execute a tactical ambush built on material omissions and suppressed records.

Accordingly, Plaintiff respectfully requests that this Honorable Court formally caution the Defendants that the ongoing submission of frivolous arguments, paired with the active concealment of adverse state-court mandates, may be construed as bad-faith conduct and a fraud on this Court, exposing the moving parties to appropriate judicial sanctions under Federal Rule of Civil Procedure 11. Because the case remains stayed, Plaintiff's supplemental records logging continuous municipal custom ratification are valid, live, and cannot be "untimely" as a matter of law.

**PRAYER**

For the foregoing reasons, Plaintiff respectfully requests that this Honorable Court:

1. DENY Defendants' Motion to Strike (Doc. 104) in its entirety;
2. MAINTAIN Documents 99, 101, and 103 as active, permanent parts of the evidentiary record for federal court review;
3. ALTERNATIVELY, to the extent that Document 96 is deemed a supplemental legal brief requiring leave of court, RETROACTIVELY GRANT leave to file Document 96 in light of the standing judicial stay order (Doc. 92), the extraordinary circumstances, and the good cause established by Plaintiff's physical incarceration and documented mail non-delivery;
4. DENY Defendants' request to restrict or blockade Plaintiff's standard administrative and legal notice communications to the municipal corporate entity's de jure policymakers/Leadership; and
5. Grant such other and further relief, both at law and in equity, to which Plaintiff may show himself justly entitled.

Respectfully Submitted,

/S/ Tre Christopher Roberts, LL.M.

Date: June 10th 2026

1525 Aviation Blvd

Redondo Beach, CA 90278

Chrisrobertslawesq@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE** was served upon the following parties on this 10th day of June, 2026:

adam.anderson@mctx.org

Adam T. Anderson

Assistant County Attorney - Civil Division

B.D. Griffin
County Attorney Montgomery County, Texas
501 N. Thompson, Suite 300
Conroe, Texas 77301

Respectfully submitted,
/S/ Tre Christopher Roberts LL.M.

# Exhibit A

CASE NO. 25-10-16082
COUNT
INCIDENT NO./TRN:

RECEIVED AND FILED
FOR RECORD
At 3:18 O'Clock P M.

FEB 18 2026

Melisa Miller, District Clerk
Montgomery, Texas
By ____ Deputy

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 9TH |
| | § | |
| V. | § | DISTRICT COURT |
| | § | |
| CHRISTOPHER TRE ROBERTS | § | MONTGOMERY COUNTY, TEXAS |
| | § | |
| STATE ID NO.: | § | |

# MOTION TO DISMISS

**OFFENSE: THEFT PROP >=$150K<$300K ENH IAT ( FIRST DEGREE FELONY)**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES the State of Texas, by and through her District Attorney, and respectfully requests the Court to dismiss the above entitled and number criminal action for the following reason:

- ☐ Cannot prove beyond a reasonable doubt.
- ☐ The Defendant pled guilty in cause number(s) - _____
- ☐ In custody elsewhere. _____
- ☐ Old case, no arrest.
- ☒ In the interest of justice.
- ☐ Missing witness. _____
- ☐ Request of complaining witness. _____
- ☐ The Defendant is deceased.
- ☐ Motion to suppress granted.
- ☐ Co-Defendant tried, this Defendant testified. _____
- ☐ Insufficient evidence.
- ☐ Restitution made.
- ☐ Co-Defendant convicted , insufficient evidence for this Defendant.
- ☐ Case refiled as Cause No. _____
- ☐ Clearance Letter.
- ☐ No billed by Grand Jury
- ☐ Successfully completed terms of Pretrial Diversion
- ☐ Other.

EXPLANATION: _____

WHEREFORE, PREMISES CONSIDERED, it is requested that the above entitled and numbered cause be dismissed.

Respectfully submitted,

[signature]

Assistant District Attorney
Montgomery County, Texas

The forgoing motion having been presented to me On This The 18th Day Of February, 2026 and the same having been considered, it is , therefore, ORDERED ADJUDGED, and DECREED that said above entitled and numbered cause be and the same is hereby dismissed.

[signature]

JUDGE PHIL GRANT
9thDistrict Court

Minute

FEB 19 2026

Agency: Montgomery County Sheriff's Office/ No. 25A176876 / STEIN R./Ofnse Dt: 03/06/2025

CASE NO. 25-10-16082
COUNT
INCIDENT NO./TRN:

RECEIVED AND FILED
FOR RECORD
At 3:18 O'Clock P M.
FEB 18 2026
Melisa Miller, District Clerk
Montgomery, Texas
By [signature] Deputy

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 9TH |
| | § | |
| V. | § | DISTRICT COURT |
| | § | |
| CHRISTOPHER TRE ROBERTS | § | MONTGOMERY COUNTY, TEXAS |
| | § | |
| STATE ID NO.: | § | |

# ORDER OF DESTRUCTION AND FORFEITURE

On February 18, 2026, the above cause was disposed of, the following item (s) was confiscated by the **Montgomery County Sheriff's Office** case number **25A176876** on **March 06, 2025** to-wit: **included but not limited to evidence including paraphernalia if any.**

**IT IS THEREFORE ORDERED and DECREED** the law enforcement agency in possession of the evidence in this case to return the evidence to the rightful owner other than the Defendant, use the evidence for law enforcement purposes, sell the firearm pursuant to Article 18.19, or destroy the evidence at any date after 30 days from the date of this order pursuant to Article 47.01 and Chapter 59 of the Texas Code of Criminal Procedure. **This order also includes any firearms (if applicable).**

Signed and Entered on this the 18th day of February, 2026

[signature]
**JUDGE PHIL GRANT**
**9th District Court**

Minute
FEB 19 2026

Case 4:26-cv-01389 Document 76-3 Filed 05/04/26 in TXSD Page 1 of 4

RECEIVED AND FILED
FOR RECORD
At 2:45 O'Clock P M.

OCT 0 1 2025

Melisa Miller, District Clerk
Montgomery, Texas
By ______ Deputy

25-10-16082 9th

# The STATE OF TEXAS

# COMPLAINT

## Affidavit For Warrant of Arrest

| Count | Charges | Statute | Degree | DA File # | Agency # |
|---|---|---|---|---|---|
| 1 | THEFT PROP >=$150K<$300K ENH IAT | 31.03(f) | First Degree Felony | 25F-005426 | 25A176876 |

**In the Name and by Authority of The STATE of TEXAS:**

BEFORE ME, the undersigned Authority, on this day personally appeared R. Stein, who after being by me duly sworn, on oath deposes and says: That He has good reason to believe and does believe and charged that heretofore, to-wit: on or about March 06, 2025, A.D., and before the making and filing of this Complaint, in the County of Montgomery and State of Texas, **CHRISTOPHER TRE ROBERTS**, the Defendant, did then and there unlawfully appropriate property, to-wit: real property, of the value of $300,000 or more, from Lillene Ebanks, the owner, who was then and there an elderly individual, with intent to deprive the owner of the property,

Affiant, R. Stein, is a certified Texas Peace Officer employed by Montgomery County Sheriff's Office. Based on his/her own investigation and review of Offense Report # 25A176876, Affiant can state the following:

On March 19, 2025, Officer Bymaster of the Roman Forrest Police Department took a report from Lillene Ebanks who is 70 years old, DOB: 04/17/1955, ID by her TX DL 00682153. The complainant stated her niece, Christina Laugere, filed a quick deed claim on her house without her knowledge. The complainant found out about the quick claim deed when an appraiser came to her house. The appraiser stated a mortgage company had sent him to the Woodgreen Terrace. The suspect Laugere was trying to cash out the equity for the house. The complainant stated the house is paid off and is worth approximately $250, 000.

On June 12, 2025 Deputy Robinson took a report from Lilliene Ebanks. Lillene stated that she went to pay her taxes at the Montgomery County Tax office and found that she no longer owned the properties. Lilliene found her two pieces of property had been transferred to her niece, Christian Laugere, and a male, Tre Roberts, she does not know. The tax office provided Lilliene with a copy of 2 Quit Claim Deeds that Lilliene indicated she did not authorize. One property is located in Roman Forest and she has file a report in Roman Forest, RFPD case 25G002840, for



Minute

OCT 0 1 2025

Case 4:26-cv-01389 Document 76-3 Filed 05/04/26 in TXSD Page 2 of 4

that property and the other is this property. Tax office lady advised the couple came in a few minutes apart and filed the Quit Claim Deeds on the same day.

On June 20, 2025, Affiant with the Montgomery County Sheriff's Office was assigned this case. Affiant spoke with Roman Forest Police Department and had their case referred to Montgomery County Sheriff's Office under Case # 25A233327. The cases were worked under MCSO Case # 25A176876.

The first property involved is listed by Quit Claim Deed by Montgomery County Clerk Document # 2025022380 with a Legal Description of S798706 – PINEWOOD AT GRAND TEXAS 06, BLOCK 2, LOT 11 has an approximate worth of $50,000 per the 2024 Tax Assessment. The address associated with this property is listed as 22342 Curly Maple Dr, New Caney, Tx 77357. The document that was filed states that the Grantor is Lillene Christy Ebanks and the Grantee is Tre Christopher Roberts and it shows as that it was notarized by Sharon Dixon of the Commonwealth of Virginia. The document was signed on March 6, 2025 and was filed on March 10, 2025

The second property that is involved is located at 23764 Woodgreen Terrace, New Caney, TX and had had a Quit Claim Deed filed with the Montgomery County Clerk's Office with Document # 2025022283. The legal description is TAVOLA SEC 25, BLOCK 1, LOT 16 23764 WOODGREEN DR., NEW CANEY, TX 77357. It lists the Grantor as Lillene Ebanks and the Grantee is Christa Laugere. The document was notarized by Sharon Dixon of the Commonwealth or Virginia. The document is dated March 6, 2025 and filed at March 10, 2025.

In reviewing the information about the properties Affiant subpoenaed and received copies of records from the Montgomery County Tax Assessor's Office, The Montgomery County Appraisal District, and the Montgomery County Clerk of Courts. In the Warranty Deeds for both properties they are both notarized by Sharon Dixon. Sharon Dixon is a Notary for the Commonwealth of Virginia.

Affiant spoke to Sharon Dixon and she advised that she does work online through a company that she owns named Executive Notary Pro at the phone number 757-320-0535. Sharon was shown copies that had her notary information affixed to and she stated that the first signature is not hers and pointed out how the bottom of the S in her first name was cut off. Sharon went on to say that this was a forgery due to her seal not being next to her name. Sharon confirmed she notarized a Power of Attorney document for Tre Roberts on May 15, 2024, at 11:35 PM but she did NOT notarize the Quit Claim Deed dated March 6, 2025. She reviewed a copy of the Quit Claim Deed and confirmed that the notarial acknowledgment appears to have been altered, and that her signature has been forged. She had no record in her official notary journal of notarizing a Quit Claim Deed for Tre Roberts. Affiant presented Sharon with the quick claim deed from the Roman Forest address and she stated that she didn't have any records about completing that deed. Sharon also confirmed that her Notary stamp and seal were fraudulent.



Minute

OCT 0 1 2025

Case 4:26-cv-01389 Document 76-3 Filed 05/04/26 in TXSD Page 3 of 4

On September 19, 2025, Affiant attempted to make contact with Christina and Tre via telephone calls and in both cases left voicemails for them to contact Affiant about this case. Affiant did make contact with Christina and she stated that her grandmother left her the property, however she didn't know of any wills or probate actions that granted her the property. Christina stated that she did sign the Deed on Woodgreen Terrace Dr. and that Lillene was present. Christina stated that she doesn't know anything about the Deed on Curly Maple or Tre Christopher Roberts. Christina stated that her uncle (Dryl) and her father (Deal) know more about the estate. Affiant contacted Dryl and he stated Lillene was taking care of the estate. Affiant has reached out to Deal and have had no contact.

The value of the property located at 22342 Curly Maple, New Caney, Tx 77357 Property ID # 548471 is $253,617 and the value of the property located at 23764 Wood Green Terrace Dr, New Caney, Tx 77357 Property ID # R485745 Is $226,000 Per the Montgomery County Tax Office. The total loss is $479,617.

Wherefore I believe that probable cause exists to believe that ROBERTS, CHRISTOPHER TRE has committed the felony offense of THEFT PROP >=$150K<$300K ENH IAT. Accordingly, I ask for issuance of a warrant authorizing the arrest and seizure of ROBERTS, CHRISTOPHER TRE for said offense and that he/she be dealt with as the law provides.

**Against the Peace and Dignity of the State.**

[signature]
Affiant

SUBSCRIBED and SWORN to before me by said Affiant on this the 25th day of September, 20 25 and I am an official authorized to administer this oath pursuant to Tex. Gov't Code § 602.002.

Justin Pierce
Printed Name of Peace Officer

[signature] 11776
Signature of Peace Officer



Minute

OCT 01 2025

Case 4:26-cv-01389 Document 76-3 Filed 05/04/26 in TXSD Page 4 of 4

Sworn to and subscribed before me by ________________, a credible person this _____day of ____________________, 20____.

______________________________

Assistant District Attorney/Magistrate

BOND RECOMMENDATION: $ 100,000./ Victim is elderly and value of the property

I, the undersigned Magistrate, have examined the facts, statements and charges set out in the above complaint together with the reasons of the Affiant to believe that such charge is true and correct and after receiving evidence and testimony in support of such charge I find that probable cause exists for the issuance of a warrant for the arrest of the above accused.

[signature]

MAGISTRATE, 9th Judicial District
Montgomery County, Texas

DATE: 09/30/25

J. WALKER
PRINTED NAME OF MAGISTRATE

Upon issuance of warrant, to be assigned to the _______District Court.

Warrant # ______________ Date Issued: ____________________

Bond Amount $ 50,000.—



Minute

OCT 01 2025

Case 4:26-cv-01389 Document 76-2 Filed 05/04/26 in TXSD Page 1 of 4

**THE STATE OF TEXAS**

**V.**

**Tre Christopher Roberts**
**PID: 2574571**
Related Case(s): 25F-005425

RECEIVED AND FILED FOR RECORD AT ___ O'Clock ___M. APR 07 ___
Melisa Miller, District Clerk Montgomery County, Texas By ___ Deputy

**9th District Court**

**Cause No. 26-03-05426 -CR**
**Re-Indictment**

# INDICTMENT

| Count | Charges | Statute | Degree | DA File # | Agency # |
|---|---|---|---|---|---|
| 1 | **FORGERY FINANCIAL INSTR >=$150K<$300K ENH IAT** | **32.21(e-2)** | **F1** | **26F-001197** | **25A176876** |

## IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:

**THE GRAND JURY,** for the County of Montgomery, State of Texas, duly selected, empaneled, sworn, charged, and organized as such by the **221st** Judicial District Court for said County, upon their oaths present in and to said Court that **Tre Christopher Roberts,** on or about **March 06, 2025,** and before the presentment of this indictment, in the County and State aforesaid, did then and there with intent to defraud or harm another, issue, transfer, register the transfer of, pass, publish or otherwise utter by filing with the Montgomery County Clerk's Office, a writing that is or purports to be a quit claim deed, that was altered, made, completed, executed, or authenticated so that it purports to be the act of another who did not authorize that act, of the tenor following: SEE ATTACHMENT

It is further alleged that the defendant engaged in conduct to obtain or attempt to obtain a property, namely real property, and the value of the property was more than $150,000 but less than $300,000.

It is further alleged that the defendant committed the offense against Lillene Ebanks, an elderly individual 65 years of age or older.

**Against the Peace and Dignity of the State.**

B. W. Walt
**Foreman of the Grand Jury**

Minute
APR 07 2026

25A176876

DOC #2025022380

# QUIT CLAIM DEED

This Quit Claim Deed is made on March 06, 2025, by and between Lillene Christy East Bank - Lillene Christy Ebanks, whose address is 28141 FM 1485 Rd, New Caney TX 77357, and Tre Christopher Roberts, whose address is 525 Broadway Apt 1039, Santa Monica CA 90401.

## 1. Transfer of Property

For valuable consideration, the Grantor(s) hereby transfer(s) and release(s) to the Grantee(s) all of the Grantor(s)' rights, title, and interest in the following property located in the State of Texas:
22342 Curly Maple Dr, New Caney TX 77357 Sec 6, BLOCK 2, Lot 11 Pinewood at Grand Texas

## 2. No Guarantees

This transfer is made without any promises or guarantees about the title, condition, or any claims or liens on the property.

## 3. Applicable Laws

This deed is governed by the laws of the State of Texas for matters related to the property and by the laws of the Commonwealth of Virginia for the execution and notarization of this document.

## 4. Signing and Notarization

This deed is signed in the Commonwealth of Virginia and will be notarized according to Virginia law. No witnesses are required.

**Grantor(s):**
Lillene Christy East Bank (Lillene Christy Ebanks)
Lillene Ebanks

**Grantee(s):**
Tre Christopher Roberts

**NOTARY ACKNOWLEDGMENT**

Commonwealth of Virginia
County/City of Williamburg

On this 6th day of March, 2025, before me, a notary public, personally appeared Lillene Christy Ebanks, who is known to me (or proved to me with satisfactory evidence) to be the person(s) who signed this document and acknowledged that they did so voluntarily for the purposes stated in it.

**Notary Public:** SDixon

Sharon Dixon
My Commission Expires: 04/30/2028
Notary Registration Number: 7902482
(See Attached)

Page 1 of 3
THE STATE OF TEXAS
COUNTY OF MONTGOMERY
CERTIFIED COPY

Case 4:26-cv-01389 Document 76-2 Filed 05/04/26 in TXSD Page 3 of 4

25A176876

ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of VIRGINIA )
County of WILLIAMSBURG )

On March 6, 2025 before me, Sharon Dixon, a Notary Public, personally appeared Lillene Christy East Bank (Lillene Christy Ebanks), who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of ~~California~~ VIRGINIA SD that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

(seal) Signature S Dixon

SHARON DIXON
Electronic Notary Public
Commonwealth of Virginia
Commission #: 7902482
Commission Expires: 04/30/2028



Page 2 of 3
THE STATE OF TEXAS
COUNTY OF MONTGOMERY
CERTIFIED COPY

25A176876

Doc #: 2025022380
Pages 3

**FILED FOR RECORD**
03/10/2025 04:15PM

L. Brandon Steinmann
County Clerk
Montgomery County, Texas

STATE OF TEXAS,
COUNTY OF MONTGOMERY
I hereby certify that this instrument was filed in the file number sequence on the date and time stamped herein by me and was duly RECORDED in the Official Public Records of Montgomery County, Texas.

**03/10/2025**

L. Brandon Steinmann
County Clerk
Montgomery County, Texas

ORIGINAL RETURNED AT TIME OF RECORDATION

I hereby certify that this is a true and correct copy of the original record on file in my office.

L. Brandon Steinmann, County Clerk
Montgomery County, Texas

by A Hanson Deputy

Issued JUN 0 3 2025

# Exhibit B

United States District Court
Southern District of Texas
ENTERED
May 15, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| TRE CHRISTOPHER ROBERTS, *Plaintiff,* | § | |
| V. | § | CIVIL ACTION NO. 4:26-CV-1389 |
| MONTGOMERY COUNTY, ET AL., *Defendants.* | § | |

## ORDER

Plaintiff, pro se, filed a Complaint on February 20, 2026 asserting civil rights violations against Montgomery County and individual officers related to an arrest warrant for felony theft.[1] ECF 1. The case is currently set for an Initial Pretrial Conference on May 28, 2026. ECF 4. On May 4, 2026, Defendants filed a Motion to Dismiss asserting multiple grounds for dismissal of this case, including prosecutorial immunity, qualified immunity, the *Younger* abstention doctrine, and failure to plead municipal liability under *Monell.* ECF 76. Plaintiff recently filed a change of address confirming he is currently incarcerated in the Montgomery County Jail. ECF 91. It is therefore

ORDERED that the May 28, 2026 Initial Pretrial Conference is CANCELED.

---

[1] The District Judge referred the case to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. ECF 34.

It is further

ORDERED that this case is STAYED pending a ruling on Defendants' Motion to Dismiss.

Signed on May 14, 2026, at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge